David S. Rankine, Law Offices of William L. McNall, Anchorage, Alaska, for debtors.

**In re Ben L. MARTIN and Patricia A. Martin, Debtors.**

**Bankruptcy No. A89–00258.**

United States Bankruptcy Court, D. Alaska.

Oct. 12, 1989.

## MEMORANDUM DECISION DENYING UNITED STATES TRUSTEE'S § 707(b) MOTION TO DISMISS

HERBERT A. ROSS, Bankruptcy Judge.

The United States Trustee moved to dismiss this chapter 7 case unless debtors agree to convert to chapter 13. The motion was filed under the "substantial abuse" provision in 11 U.S.C. § 707(b) which states:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

The issue is whether the court *must* dismiss a chapter 7 case, unless a debtor agrees to convert to a chapter 13 case, where there is evidence that some percentage of a debtor's unsecured debt could be paid in a feasible chapter 13 plan, but no other evidence of manipulation of the system or disregard for creditors is present.

The three circuit courts which have ruled on the merits of § 707(b) "substantial abuse" cases concerned cases in which the

bankruptcy judge had dismissed the case for substantial abuse in the first instance and the circuit court was upholding that decision. *In re Kelly*, 841 F.2d 908, 913–915 (9th Cir.1988); *In re Krohn*, 886 F.2d 123 (6th Cir.1989); and, *In re Walton*, 866 F.2d 981 (8th Cir.1989).[1] None of these cases say that a judge abused his discretion in failing to dismiss based solely on a finding that a chapter 7 debtor could, but chooses not to, fund a chapter 13 plan.

The circuit courts have, in general, interpreted § 707(b) to allow dismissal on two grounds. "Substantial abuse can be predicated upon either lack of honesty or want of need." *Matter of Krohn* at 125. Circuit courts have said that the availability of discretionary income to fund a plan is a key factor in determining whether to dismiss for substantial abuse. *See In re Kelly* at 914 ("... we hold that the debtor's ability to pay his debts when due, as determined by his ability to fund a chapter 13 plan, is the primary factor to be considered in determining whether granting relief would be a substantial abuse."); *Matter of Krohn, id* at 125 ("... a court would not be justified in concluding that a debtor is needy and worthy of discharge, where his disposable income permits liquidation of his consumer debts with relative ease."); and, *In re Walton* at 983–984.

■ Nonetheless, I interpret § 707(b) to grant discretion to deny a motion to dismiss for "substantial abuse" where there is evidence of an ability to fund some type of plan, but the court feels the debtor is entitled to the benefit of a "fresh start" without being forced to accept chapter 13 or dismissal. There is a presumption in favor of granting the relief requested by debtor. This is not an evidentiary presumption under Fed.R.Ev. 301, but the presumption:

> is in reality a caution and a reminder to the bankruptcy court that the Code and Congress favor granting relief, and that accordingly, "the court should give the benefit of any doubt to the debtor and

dismiss a case only when a substantial abuse is present." 4 *Collier* § 707.08 [sic], at 707–19.

*In re Kelly* at 917.

■ Mrs. Martin is a teacher in the remote Alaska native village of Kongiganak, Alaska, at the mouth of the Kuskokwim River. Mr. Martin is now unemployed or partially employed. The Martins live in a native culture which is essentially foreign to them. The only practical means in and out of the community is by small plane.

The cost of food and clothing, if available locally, is very high. They must travel to the relatively larger community of Bethel, Alaska, or Anchorage to get relief from the cultural shock, for medical and dental attention, and to shop at more reasonable prices. Bethel is about 100 miles up stream on the Kuskokwim, and itself is a community of largely native Alaskan people.

The Martins came to Alaska in 1985 to engage in a business with a cousin. This was to be a partnership venture in a restaurant business in Anchorage. Due to problems with the partnership relationship and the downward trend of the economy just when debtors went into business, the business failed. The debtors moved to the bush in 1987 when Mrs. Martin found work as a teacher.

The total of the Martins' unsecured debt is about $13,000. There is nondischargeable federal tax debt in the amount of $2,300 which was originally scheduled for personal income taxes. Post-petition, debtors discovered another debt of about $7,600 for withholding tax obligations which the debtors became aware of after filing this case. Thus the debt for priority and unsecured creditors was originally scheduled at about $15,400, and is now calculated at about $23,000.

At the oral argument, the court tentatively found that the budget showed an excess of about $350 per month of disposable income without regard to the possible

---

**1.** A bankruptcy judge's dismissal of a motion brought under § 707(b) by a bank was upheld, but on the grounds of lack of standing to bring the motion, and not on the merits. *Matter of Christian*, 804 F.2d 46 (3rd Cir.1986). The issue in *Matter of Booth*, 858 F.2d 1051 (5th Cir.1988) was whether the bankruptcy judge had properly classified certain debts as "consumer debts."

earnings by the husband and without including the debtors' Alaska Permanent Fund dividend checks estimated to be $1,800 or equivalent to $150 per month.

Work for Mr. Martin in Kongiganak is uncertain. He has had occasional work as a substitute teacher or unloading aircraft for the school district, but he can only be hired if he does not displace an available Eskimo worker. For argument, I have estimated Mr. Martin might obtain work netting him $200 per month for illustrating a potential plan which the Martins might propose if they choose.

There may be work for Mr. Martin in Idaho, but this entails travel expenses and a splitting of the family unit which does not seem feasible if Mrs. Martin is to remain as a teacher in the remote Alaska community where she works. If the family leaves Alaska, the Alaska Permanent Fund checks would cease.

On paper, the debtors could fund a plan providing:

| | | |
|---|---|---|
| —$350/mo × 36 mos.= | $12,600 | —from Mrs. Martin's salary |
| —$150/mo × 36 mos.= | $ 5,400 | —from AK Perm. Fund div. |
| —$200/mo × 36 mos.= | $ 7,200 | —from Mr. Martin's est. pay |
| TOTAL= | $25,200 | —possible plan payments |

The evidence shows the Martins may be able to pay at least 50% of the unsecured and priority debt if they elected to convert to chapter 13 and file a 36–month plan, and possibly more. It is also a possibility that to find employment for Mr. Martin, the family will have to leave Alaska and this income may not be secure in the future.

The court finds there is no other considerations such as "bad faith" in the sense of running up credit card or other debt in contemplation of filing chapter 7, abusive pre-petition bankruptcy planning, or disregard of creditors.

On paper a plan could be devised. In reality, the future for the Martins looks difficult, and, to deny them a fresh start if they do not choose to convert to chapter 13, is not required by § 707(b). Life is too complex to make determinations of "substantial abuse" *only* on the basis of a budget filed in chapter 7. *See* the dissent in *In re Walton* at 987. In an easy factual case, it is easy to say the finding can be only on the ability to pay, but in reality the courts had to look at the entire case before coming to that conclusion.

The Martins are in this remote village after having been disappointed in a failed restaurant business with a relative begun at the beginning of Alaska's unprecedented depression. They are locked currently in a relatively new situation where only one of them is employed full time in a relatively hostile climate and strange culture. They should not be pushed to the edge of financial survival because a plan looks feasible on a cold financial statement. Notwithstanding the allowance by *Kelly* of a finding of substantial abuse where an ability to repay is shown, no case is really determined in a vacuum excluding all other inquiry.

In this case, the factors for allowing the debtors to proceed in chapter 7 have convinced me to rule against the United States Trustee. The United States Trustee's motion to dismiss on § 707(b) grounds is denied.