In re Barriett A. GOMES and Gloria A. Gomes, Debtors.

Barriett A. GOMES and Gloria A. Gomes, Appellants,

v.

UNITED STATES TRUSTEE, Appellee.

BAP No. EC–97–1599–RRYAH.
Bankruptcy No. 97–22812.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Jan. 23, 1998.

Decided March 24, 1998.

Daniel R. Bell, Law Offices of John A. Tosney, Sacramento, CA, for Barriet A. and Gloria A. Gomes.

Donna S. Tamanaha, Office of U.S. Trustee, Sacramento, CA, for U.S. Trustee.

Before: RUSSELL, RYAN and AHART[1], Bankruptcy Judges.

### OPINION

RUSSELL, Bankruptcy Judge.

A hearing was held on July 23, 1997 on the United States Trustee's motion to dismiss the debtors' chapter 7 case under § 707(b).[2] On July 25, 1997, the court issued its Civil Minute Order dismissing the case if it were not converted to one under chapter 13 by July 31, 1997. The debtors converted their case to chapter 13 before the effective date of the order. The chapter 13 case is currently pending. The debtors appeal the bankruptcy court's finding that the debtors' ability to provide a 43% distribution to their unsecured creditors under a three-year chapter 13 plan constituted substantial abuse pursuant to § 707(b). We AFFIRM.

### I. FACTS

On February 26, 1997, Barriett and Gloria Gomes ("Gomes") filed a voluntary joint bankruptcy petition under chapter 7. Their petition was filed concurrently with the Statement of Financial Affairs, Schedules of Property and Liabilities, Statements of Income and Expenditures, and Statement of Intention.

The Gomes' Schedule "I" indicated that they are both employed. Mr. Gomes has worked as a parts manager for Steven Hopkins Honda for 26 years, and Mrs. Gomes has worked as a contracts clerk at Avery Greene Motors for almost 8 years. The Gomes listed a combined monthly income of $5,256.90.

On Schedule "J," the Gomes claimed total monthly expenses of $4,207.00. In addition, the Gomes stated that they did not anticipate any increase or decrease of more than 10% within the year in any of the Schedule "I" categories. Based on the figures above, the Gomes' monthly disposable income was scheduled as $1,049.90.

On June 9, 1997, the United States Trustee ("UST") filed a motion to dismiss the case under § 707(b) because the Gomes had sufficient disposable income to fund a chapter 13 plan and could pay a substantial portion of their debts. The UST argued that the Gomes were currently employed and gave no indications that they had suffered any sudden economic hardship, serious illness, unemployment, or any other unforeseen calamity.

On July 11, 1997, the Gomes filed an amended Schedule of Expenditures. On their amended Schedule "J," the Gomes "corrected" the expenses for food, clothing, medical and dental expenses, and recreational expenses, bringing the total monthly expenses to $3,969.00, thereby providing a monthly disposable income of $1,287.90.

On July 16, 1997, the Gomes filed an opposition to the UST's motion to dismiss, in which they stated that the new disposable income figure of $1,287.90 would provide a 43% return to creditors in a 36 month chapter 13 plan, or a 57% return in a 48 month chapter 13 plan. Based on their figures, the Gomes argued that those returns did not provide a sufficient ability to pay debts to give rise to substantial abuse under § 707(b). The Gomes mentioned in their declaration

---

1. Hon. Alan M. Ahart, Bankruptcy Judge for the Central District of California, sitting by designation.

2. Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330 and the Federal Rules of Bankruptcy Procedure, Rules 1001–9036.

that since the filing of the petition, they have been receiving a $500.00 allotment for the care of their grandchildren. The debtors contended, however, that it was uncertain whether they would continue to receive the extra money. The Gomes further asserted that Mr. Gomes was intending to reduce his employment hours due to his back problems, which would result in a 20% pay reduction.

On July 21, 1997, the UST filed a reply to the Gomes' opposition. The UST argued that the additional income of $500.00 per month increased the Gomes' total combined income from $5,276.90 to $5,756.90, leaving a monthly disposable income in the amount of $1,787.90. Therefore, the new disposable income would allow the Gomes to fund a chapter 13 plan that could pay all unsecured creditors 61% over three years or 81% over four years.

At the hearing on the UST's motion to dismiss, counsel for the Gomes admitted, without relying on the $500.00 allotment, that there existed a net disposable income in the sum of at least $1,287.90. The bankruptcy court accepted the Gomes' concession of $1,287.90, and determined that the Gomes' ability to provide a 43% distribution to their unsecured creditors warranted dismissal of their case for substantial abuse pursuant to § 707(b).

The bankruptcy court entered a Civil Minute Order granting in part and denying in part the UST's motion to dismiss.[3] The Gomes appeal.

## II. ISSUE

Whether the bankruptcy court abused its discretion in ordering the dismissal of the Gomes' chapter 7 case for substantial abuse pursuant to § 707(b) if it were not converted to one under chapter 13.

## III. STANDARD OF REVIEW

The Bankruptcy Appellate Panel reviews orders of dismissal of a bankruptcy case for

[3.] The Civil Minute Order was filed on July 25, 1997 and provided that the case would not be dismissed until July 31, 1997, so that the Gomes could have the opportunity to voluntarily convert their case to one under chapter 13. The Gomes'

an abuse of discretion. *In re Leavitt,* 209 B.R. 935, 938 (9th Cir. BAP 1997); *In re Marsch,* 36 F.3d 825, 828 (9th Cir.1994). The bankruptcy court abuses its discretion where its ruling is based on an erroneous view of the law or on a clearly erroneous finding. *In re Medina,* 205 B.R. 216, 220 (9th Cir. BAP 1996) (citing *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2460–61, 110 L.Ed.2d 359 (1990)).

## IV. DISCUSSION

*Whether The Bankruptcy Court Abused Its Discretion In Ordering The Dismissal Of The Gomes' Chapter 7 Case For Substantial Abuse Pursuant To § 707(b) If It Were Not Converted To One Under Chapter 13*

Section 707(b) states:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

■ There are two prerequisites which must be satisfied in order for a chapter 7 case to be dismissed under § 707(b). First, the individual who seeks relief under chapter 7 must have debts that are "primarily consumer debts." Second, the granting of relief must represent a "substantial abuse" of that chapter.

### 1. *Primarily consumer debts*

The Gomes scheduled secured claims in the total amount of $174,099.92 and unsecured nonpriority claims in the sum of $97,-149.62. The UST and the Gomes agree that the debts in question are primarily consumer debts within the meaning of § 707(b).[4] Thus,

ex parte application to convert the case from chapter 7 to chapter 13 was granted on July 28, 1997.

[4.] In their opposition to the UST's motion to dismiss, the Gomes stipulated that their debts

we are left to discuss the second prerequisite of substantial abuse under § 707(b).

### 2. *Substantial abuse*

It is undisputed that the Gomes' disposable income is at least $1,287.90, which would provide a return of 43% in 36 months or 57% in 48 months. The dispute is whether the ability to fund a chapter 13 plan with at least a 43% return rises to the level of substantial abuse for the purposes of § 707(b).

The term "substantial abuse" is not defined in the Code. The Ninth Circuit has determined substantial abuse by examining a debtor's ability to fund a chapter 13 repayment plan. In *In re Kelly*, 841 F.2d 908 (9th Cir.1988), the Ninth Circuit held

the debtor's ability to pay his debts when due, as determined by his ability to fund a chapter 13 plan, is the primary factor to be considered in determining whether granting relief would be substantial abuse.

*Id.* at 914.

In arriving at its holding, the court in *Kelly* referred to the following legislative history of § 707(b):

Indeed, the committee report on the final version of S. 445 states clearly that dismissal for substantial abuse is intended to "uphold[ ] creditors' interests in obtaining repayment where such repayment would not be a burden," and that "if a debtor can meet his debts without difficulty as they come due, use of Chapter 7 would represent a substantial abuse." S.Rep. No. 65, 98th Cong., 1st Sess. 53, 54 (1983).

*Kelly*, 841 F.2d at 914 (footnote omitted).

The Gomes argue that because the court does not define what constitutes the "ability to fund a chapter 13 plan," such "ability"

appears to be repayment of 99% to 100% of unsecured debt. The Gomes base their assertion on the fact that the *Kelly* court found the debtors' ability to repay approximately 99% of their unsecured debt in three years was substantial abuse. See *id.* at 915. The Gomes suggest that where a debtor's ability to repay his debts is the sole factor available to determine substantial abuse, such abuse occurs when a debtor is able to repay a very high percentage of indebtedness. The Gomes contend that 43% is not high enough to indicate an ability to fund a chapter 13 plan and therefore does not show substantial abuse under § 707(b).

As support for their position that 43% is too low to affirm the dismissal of their chapter 7 petition, the Gomes turn to jurisdictions that adhere to the "totality of the circumstances" approach to finding substantial abuse. Under the "totality of the circumstances" approach, the ability to fund a chapter 13 plan is one of several other factors considered in determining substantial abuse.[5] The Gomes maintain that where there is a low percentage of return, other factors are to be considered to find the existence of substantial abuse.

The UST's argument centers on the holding in *Kelly*. The UST maintains that there is no case law to support the Gomes' argument that courts which abide by the "ability to pay" standard require a certain threshold repayment percentage for a finding of substantial abuse. We agree.

There are two problems with the Gomes' position. First, a finding of substantial abuse pursuant § 707(b) in the Ninth Circuit is governed by the "ability to pay"

---

were primarily consumer debts within the meaning of § 707(b).

5. According to *In re Green*, 934 F.2d 568, 572 (4th Cir.1991), the "totality of the circumstances" view involves the consideration of factors such as the following:

(1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

(2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;

(3) Whether the debtor's proposed family budget is excessive or unreasonable;

(4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and

(5) Whether the petition was filed in good faith.

For other similar factors, *see In re Krohn*, 886 F.2d 123, 126–127 (6th Cir.1989); *In re Gyurci*, 95 B.R. 639, 642 (Bankr.D.Minn.1989); *In the Matter of Dubberke*, 119 B.R. 677, 679 (Bankr. S.D.Iowa 1990).

approach articulated in *Kelly*, in which the Ninth Circuit held that a debtor's ability to fund a chapter 13 plan is the primary factor in determining substantial abuse. *See id.* at 914. Moreover, a debtor's ability to pay his debts, standing alone, can support the conclusion of substantial abuse. *See id.* at 915.[6] The court also noted that Congress did not specify a threshold percentage or formula for determining what constitutes the "ability" to pay one's debts. *See id.* at 914. Thus, under the law of the Ninth Circuit, there is no basis for the Gomes' contention that a case which provides a 43% return under a three year chapter 13 plan is too low to preclude chapter 7 relief on the ground of substantial abuse pursuant to § 707(b). *See e.g, In re Gaoiran*, 113 B.R. 667, 669 (Bankr.D.Hawai'i 1990) (after adjustments in expenses, the debtors could pay close to 45% of their claims through a chapter 13 plan); *In re Gaskins*, 85 B.R. 846, 848 (Bankr.C.D.Cal.1988)(debtors could pay 54% of their debts over a three year chapter 13 plan).

The second problem with the Gomes' argument is even if we were to consider other factors such as those delineated in the "totality of the circumstances" approach to determine the meaning of the "ability" to fund a chapter 13 case, the Gomes have not presented us with any additional factors with which to do so.[7]

█ The bankruptcy court found that the Gomes' disposable income in the amount of $1,287.90 was "no small sum" for purposes of funding a chapter 13 plan, and we agree.

We hold that the ability to fund a 36 month chapter 13 plan with a 43% return is enough to preclude the Gomes' petition for relief under chapter 7. Therefore, the court did not abuse its discretion in ordering dismissal of the Gomes' case for substantial abuse pursuant to § 707(b) if they did not timely convert their case to chapter 13.

## V. CONCLUSION

In the Ninth Circuit substantial abuse is determined by examining a debtor's ability to pay debts under a chapter 13 plan. The bankruptcy court did not abuse its discretion by ordering that unless the Gomes converted their chapter 7 case to chapter 13, their chapter 7 case would be dismissed for substantial abuse pursuant to § 707(b), on the ground that they had the ability to repay 43% of their unsecured debt over a three-year chapter 13 plan. Accordingly, we AFFIRM.

---

**6.** *But see In re Martin*, 107 B.R. 247 (Bankr.D.Alaska 1989). Notwithstanding the holding in *Kelly*, the *Martin* court did not apply the "ability to pay" approach. In *Martin*, the debtors had the ability to repay a large portion of their debts. However, because the debtors lived in a remote village in Alaska and faced an uncertain and difficult future as a result of their residence, the court interpreted § 707(b) as giving the court discretion to deny a motion to dismiss for substantial abuse where the court feels a debtor should receive a "fresh start" even if the debtor has some type of ability to fund a chapter 13 plan. *See id.* at 248.

**7.** In their declaration in support of their opposition to the UST's motion to dismiss, the Gomes mention the possibility of a 20% reduction in income due to Mr. Gomes' back problems. We will not take this situation into consideration in

determining whether the court abused its discretion in finding substantial abuse because the Gomes did not argue this fact to us on appeal.

However, even if we were to consider the possible 20% pay reduction and Mr. Gomes' back problem as a mitigating factor for granting relief under chapter 7, the Gomes provide no documentation to verify the existence of Mr. Gomes' back problem or how the figure of 20% was calculated. The alleged possibility of a pay reduction is hardly determinative for excusing the Gomes from a finding of substantial abuse. *See In re Morse*, 164 B.R. 651, 657 (Bankr.E.D.Wash. 1994) (an anticipated increase in medical expenses due to the debtor's possible heart problem that was not yet fully diagnosed was not a mitigating factor that could excuse the debtors from the court's finding of substantial abuse).