# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

98-6024NISC

_____

In re: Carrie Doreen Nelson     \*

       \*

      Debtor     \*

       \*

Carrie Doreen Nelson     \*

       \*

     Debtor - Appellant     \*    Appeal from the United States

       \*    Bankruptcy Court for the Northern

      v.     \*    District of Iowa

       \*

Siouxland Federal Credit Union     \*

Nebraska State Bank     \*

Wil L. Forker, Trustee     \*

Barbara G. Stuart, United States Trustee     \*

       \*

     Creditors - Appellees[1]     \*

_____

Submitted: July 9, 1998
Filed: August 21, 1998

_____

Before KRESSEL, WILLIAM A. HILL, and FEDERMAN,[2] Bankruptcy Judges

_____

FEDERMAN, Bankruptcy Judge

_____

[1]Creditor Nebraska State Bank, Chapter 7 Trustee Wil L. Forker, and United States Trustee Barbara G. Stuart did not participate in the appeal.

[2]The Honorable Arthur B. Federman, United States Bankruptcy Judge for the Western District of Missouri, sitting by designation.

Doreen Nelson (the "Debtor") appeals from a bankruptcy court order[3] entered on March 5, 1998. In that order the court indicated her Chapter 7 case would be dismissed for substantial abuse after March 16, 1998. The court offered her an opportunity to convert her case to one under Chapter 13 of the Bankruptcy Code (the "Code") before that time, which she failed to do. For the following reasons, we affirm the decision of the bankruptcy court.

**I**

Ms. Nelson filed her Chapter 7 bankruptcy petition on December 4, 1997, in the United States Bankruptcy Court for the Northern District of Iowa. Ms. Nelson is an associate degree nurse and the single mother of two children. She has worked at the same hospital for ten years. Her current hourly wage is $18.28 per hour. Her annual income without overtime approximates $37,440.00. According to her bankruptcy schedules, Ms. Nelson's net monthly income is $2,160.36 and her monthly expenses are $2,155.15. Her bankruptcy schedules further reflect unsecured debt in the amount of $8,490.48.

In addition, Ms. Nelson's schedules reflect that she and her mother jointly own a 1988 Nu-Wa Fifth Wheel Camper. Siouxland Federal Credit Union has a perfected security interest in the camper, and the balance on the Note was $10,913.40 at the time of filing. Ms. Nelson makes payments in the amount of $314.00 per month to Siouxland Federal Credit Union. She testified that each month her mother then gives her a check for $157.00.

Ms. Nelson surrendered a 1994 Ford Lightning Pickup Truck to Nebraska State Bank, the secured creditor. The debt on the truck was $17,380.00 at the time of the surrender. Ms. Nelson currently drives a 1986 Chevrolet Camaro with a value of $600.00.

On February 4, 1998, the Bankruptcy Court, sua sponte, filed a motion to dismiss the case, pursuant to 11 U.S.C. § 707(b), and set a hearing on its motion for March 3, 1998. At the hearing, Ms. Nelson testified that her net monthly income, as scheduled, is accurate

---

[3]The Honorable William L. Edmonds, Chief Judge, United States Bankruptcy Court for the Northern District of Iowa.

despite the fact that her 1997 income tax return indicated that her gross income was $41,716.00. She stated she had an unusual amount of overtime in 1997, but she does not anticipate earning significant overtime in 1998. Additionally, Ms. Nelson testified that she normally receives approximately $2,000.00 per year as federal and state income tax refunds, though she received $4,043.72 in state and federal refunds in 1997. She did, however, testify that her monthly expenses were understated. She said her expenses were really $2,274.78, not $2,155.15. She also testified that her unsecured debt, as scheduled, was accurate, but she anticipated a deficiency claim on the surrendered pickup truck. There was some reference to the fact that the fair market value of the truck is approximately $10,000.00, but no evidence as to that value or to the amount of the deficiency, if any, was offered at the hearing. The bankruptcy court made a factual finding that Ms. Nelson's income should be increased by $167.00 a month due to the projected income tax refunds.

Ms. Nelson further testified that camping is her family's main form of recreation. She, therefore, has reaffirmed the debt to Siouxland Federal Credit Union. The bankruptcy court, nonetheless, found that the camper is a luxury item, and included the $157.00 that Ms. Nelson contributes each month toward the installment payments on the camper in its calculation of disposable income. As a result, the court found that Ms. Nelson has sufficient disposable income to pay a substantial portion of her unsecured debt. The court, therefore, entered an Order indicating that the Chapter 7 case would be dismissed, unless Ms. Nelson converted the case to one under Chapter 13 by March 16, 1998. Ms. Nelson, however, did not convert her case to Chapter 13 or wait for a dismissal of her Chapter 7 case. Instead, she appealed the order to this Court. Ms. Nelson appeals the finding of substantial abuse. While she does not challenge the factual findings of the bankruptcy court, she argues that the bankruptcy court abused its discretion, that the camper is not a luxury item, and that she will be unable to repay a substantial portion of her unsecured debt in a Chapter 13.

## II

We note first that this is an interlocutory order, as the Chapter 7 bankruptcy case had not been dismissed at the time of the appeal.[4] Ms. Nelson could have converted her case to Chapter 13 within the time allotted by the bankruptcy court, or she could have waited until an order of dismissal was entered before filing her notice of appeal. The Bankruptcy Appellate Panel has jurisdiction to hear appeals from "'final judgments, orders, and decrees.'"[5] But an order of the bankruptcy court indicating that the case would be dismissed, unless it was converted to Chapter 13, is not a final order. However, this court does have discretion to hear interlocutory orders with leave of the trial court.[6] In other words, parties who wish to challenge a court's interlocutory order can do so, provided they file a motion for leave to appeal with the court.[7] In some instances, a party will file a notice of appeal with the deciding court, rather than a motion for leave to appeal, even though the order being appealed is interlocutory. In the interest of judicial economy, courts will sometimes construe such a notice of appeal as a motion for leave to appeal.[8] And, the Federal Rules of Bankruptcy Procedure expressly provide that a timely notice of appeal can be treated as a timely motion for leave to appeal: "If a required motion for leave to appeal is not filed, but a notice of appeal is timely filed, the . . . bankruptcy appellate panel may grant leave to appeal or direct that a motion for leave to appeal be filed."[9] Ms. Nelson should have filed a

---

[4]Gomes v. United States Trustee (In re Gomes), 220 B.R. 84, 85 (B.A.P. 9th Cir. 1998); See also Stuart v. Koch (In re Koch), 109 F.3d 1285, 1287 (8th Cir. 1997) (holding that an order denying a motion to dismiss for substantial abuse is appealable) (emphasis added).

[5]Moix-McNutt v. Coop (In re Moix-McNutt), 215 B.R. 405, 407 (8th Cir. B.A.P. 1997) (quoting United States v. Brakkee, 813 F.2d 912, 913 (8th cir. 1987)).

[6]Id. at 408; 28 U.S.C. § 158(a)(3) and (b)(1).

[7]Fed. R. Bankr. P. 8003(a).

[8]Moix-McNutt, 215 B.R. at 408.

[9]Fed. R. Bankr. P. 8003(c).

4

motion for leave to appeal with the bankruptcy court, rather than proceed on the assumption that she could appeal. However, in this instance, no purpose would be served by this Court remanding the case to allow the bankruptcy court to enter a final order of dismissal, and then hearing an appeal from that final order at a later date. We will, therefore, construe the notice of appeal as a motion for leave to appeal an interlocutory order.[10] We will also grant Ms. Nelson leave to appeal.

## III

A bankruptcy appellate panel shall not set aside findings of fact unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witness.[11] We review the legal conclusions of the bankruptcy court <u>de novo</u>.[12] We review the bankruptcy court's order of dismissal for substantial abuse for abuse of discretion.[13] Under an abuse of discretion standard, this court cannot reverse the bankruptcy court's ruling unless it "has a definite and firm conviction that the bankruptcy court committed a clear error of judgment in the conclusion it reached upon a weighing of

---

[10]<u>Kashani v. Fulton (In re Kashani)</u>, 190 B.R. 875, 882 (9th Cir. B.A.P. 1995) (holding that a Bankruptcy Appellate Panel could treat a notice of appeal as a motion for leave to appeal).

[11]<u>Gourley v. Usery (In re Usery)</u>, 123 F.3d 1089, 1093 (8th Cir. 1997); <u>O'Neal v. Southwest Mo. Bank (In re Broadview Lumber Co., Inc.)</u>, 118 F.3d 1246, 1250 (8th Cir. 1997) (citing <u>First Nat'l Bank v. Pontow</u>, 111 F.3d 604, 609 (8th Cir.1997)). Fed. R. Bankr. P. 8013.

[12]<u>First Nat'l Bank of Olathe Kansas v. Pontow (In re Pontow)</u>, 111 F.3d 604, 609 (8th Cir. 1997); <u>Estate of Sholdan v. Dietz (In re Sholdan)</u>, 108 F.3d 886, 888 (8th Cir. 1997).

[13]<u>In re Leavitt</u>, 209 B.R. 935, 938 (9th Cir. B.A.P. 1997); <u>In re Marsch</u>, 36 F.3d 825, 828 (9th Cir. 1994).

the relevant factors."[14] An abuse of discretion will only be found if the lower court's judgment was based on clearly erroneous factual findings or erroneous legal conclusions.[15]

## IV

The bankruptcy court has the discretion to dismiss a Chapter 7 bankruptcy case on its own motion following a finding that allowing the case to proceed to discharge would be a substantial abuse of the provisions of Chapter 7:

> After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There is a presumption in favor of granting the relief requested by the debtor.[16]

Thus, dismissal under section 707(b) is only applicable if the debts are primarily consumer debts and if granting relief under Chapter 7 would be a substantial abuse of the chapter.[17] The bankruptcy court found that Ms. Nelson's unsecured debt was, indeed, primarily consumer debt in the amount of $8,490.48. Neither Ms. Nelson nor the Chapter 7 trustee, disputes that finding. We are left, therefore, only with a discussion of what constitutes substantial abuse.

---

[14]Beguelin v. Volcano Vision, Inc. (In re Beguelin), 220 B.R. 94, 97 (9th Cir. B.A.P. 1998).

[15]Mathenia v. Delo, 99 F.3d 1476, 1480 (8th Cir. 1996), cert. denied, 477 U.S. 909, 106 S. Ct. 3286, 91 L. Ed. 2d 574 (1986); In re Medina, 205 B.R. 216, 220 (9th Cir. BAP 1996) (citing Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S. Ct. 2447, 2460-61, 110 L. Ed. 2d 359 (1990)).

[16]11 U.S.C. § 707(b); Gomes v. United States Trustee (In re Gomes), 220 B.R. 84, 86 (9th Cir. B.A.P. 1998)..

[17]Gomes, 220 B.R. at 86.

The term "substantial abuse" is not defined in the Code.[18] The Eighth Circuit, however, requires the bankruptcy court to focus on the debtor's ability to repay creditors with future income in determining whether allowing a debtor to proceed under Chapter 7 would be a substantial abuse of that section.[19] In other words, the debtor's ability to pay a substantial portion of her debts, as determined by her ability to fund a chapter 13 plan, is the primary factor to be considered in determining whether granting relief under Chapter 7 would be substantial abuse.[20]

The bankruptcy court found that Ms. Nelson had net monthly income of $2,327.36 and expenses of approximately $2,117.78, leaving disposable income of $209.58. It further found that she has proven unsecured debt of $8,490.48. If Ms. Nelson converts her case to Chapter 13, she could contribute $7,544.88 ($209.58 times 36 months) toward payment of her unsecured debt. After subtracting $754.49 for payment of the Chapter 13 trustee's fee, Ms. Nelson could pay her unsecured creditors $6,790.39, or 79.9 percent of the debt. Thus, Ms. Nelson has the ability to fund a Chapter 13 plan and to repay a substantial portion of her unsecured debt from future income. The bankruptcy court's findings of fact in this regard are not clearly erroneous.

## Conclusion

Since Ms. Nelson has the ability to fund a Chapter 13 plan and to repay 79.9 percent of her unsecured debt, the bankruptcy court did not abuse its discretion in finding that the granting of Chapter 7 relief would be a substantial abuse. Accordingly, the order of the bankruptcy court is affirmed.

---

[18]In re Walton, 866 F.2d 981, 983 (8th cir. 1989).

[19]Fonder v. United States, 974 F.2d 996, 999 (8th Cir. 1992); United States Trustee v. Harris, 960 F.2d 74, 77 (8th cir. 1992); Walton, 866 F.2d at 983.

[20]Fonder, 974 F.2d at 1000.

A true copy.

Attest:

        CLERK, U.S. BANKRUPTCY APPELLATE PANEL,
        EIGHTH CIRCUIT