In re Thomas W. PRICE, Debtor.

Thomas W. Price, Appellant,

v.

United States Trustee, Appellee.

BAP No. NV–01–1627–BKRY.
Bankruptcy No. 01–32123.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted May 24, 2002.

Filed June 28, 2002.

John A. White, Jr., White Law Chartered, Reno, NV, for Thomas W. Price.

Nicholas Strozza, Office of the United States Trustee, Reno, NV, for the United States Trustee.

Before: BRANDT, KLEIN, and RYAN, Bankruptcy Judges.

## OPINION

BRANDT, Bankruptcy Judge.

Debtor Thomas W. Price appeals the bankruptcy court's order dismissing his chapter 7[1] case for substantial abuse under § 707(b). We AFFIRM.

## I. FACTS

Price filed for chapter 7 relief on 18 June 2001. According to his schedules, he owed secured debts of $167,469, priority debts of $19,356.50, and unsecured nonpriority debts of $135,727.31 ($322,552.81 total). Attached to debtor's petition was an exhibit entitled "Explication of Nature of Debt," categorizing the scheduled debts as either "personal" or "business." According to the exhibit, Price owed $72,150.86 in personal debt and $101,690.95 in business debt, for a total of $173,841.81. Not included in either category were secured debts totaling $141,511 to Bank of America and Wilshire Credit,[2] and a $7,200 priority debt to Price's ex-wife. The latter debt was for health insurance payments debtor was required to pay under the couple's divorce decree. Price does not explain why he excluded this item from his listing of personal debt, but its inclusion or exclusion is not dispositive. According to Price's amended income and expense schedules, his total monthly income was $7,273.34, with monthly expenses of $4,775.97, leaving disposable income of $2,497.37 per month.

The United States Trustee ("UST") timely moved to dismiss Price's case for substantial abuse under § 707(b), arguing that Price's debts were primarily consumer debts when the debt secured by his residence was included, and that Price could fund a chapter 13 plan paying 55% to

1. Absent contrary indication, all section and chapter references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330.

2. The obligation to Wilshire Credit is secured by a deed of trust rather than a mortgage; presumably the Bank of America debt is also so secured. This does not affect our analysis: deeds of trust and mortgages are generally treated the same, except as to enforcement proceedings. 27 Cal.Jur.3d (Rev), Part 1, *Deeds of Trust* § 3 (1987 & Supp.2002); *see also McMillan v. United Mortgage Co.*, 82 Nev. 117, 120–21, 412 P.2d 604, 605–06 (1966). We use the term "mortgage" to include deeds of trust.

unsecured creditors over 36 months, or 92% over 60 months. Price responded, and, after a hearing, the bankruptcy court entered an order on 28 September 2001 conditionally dismissing the case, unless Price converted the case to chapter 13 by 25 October. The court later stayed the order to 23 November. After we denied debtor's motion for a stay, the bankruptcy court entered a final order of dismissal on 7 December 2001. Price timely appealed.

## II. JURISDICTION

The bankruptcy court had jurisdiction via 28 U.S.C. § 1334 and § 157(b)(1), (b)(2)(A), and (b)(2)(O), and we do under 28 U.S.C. § 158(c).

## III. ISSUE

Did the bankruptcy court abuse its discretion in dismissing Price's chapter 7 case for substantial abuse under § 707(b)?

## IV. STANDARD OF REVIEW

■ We review a bankruptcy court's decision to dismiss a chapter 7 case for substantial abuse under § 707(b) for an abuse of discretion. *Gomes v. United States Trustee (In re Gomes)*, 220 B.R. 84, 86 (9th Cir. BAP 1998). A court necessarily abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). Before we may reverse under the abuse of discretion standard, we must be definitely and firmly convinced that the bankruptcy court committed a clear error of judgment. *AT & T Universal Card Servs. v. Black (In re Black)*, 222 B.R. 896, 899 (9th Cir. BAP 1998).

## V. DISCUSSION

■ Section 707(b) provides:

[a]fter notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor....

This provision requires the moving party to establish that the debtor owes primarily consumer debts and that granting chapter 7 relief represents a substantial abuse of that chapter. *Gomes*, 220 B.R. at 86. Despite his concession at hearing that both of these elements were satisfied, Price argues the dismissal of his case was error.

### A. *Primarily Consumer Debt*

■ "Consumer debt" is "debt incurred by an individual primarily for a personal, family, or household purpose[.]" § 101(8). In *Zolg v. Kelly (In re Kelly)*, 841 F.2d 908, 912–13 (9th Cir.1988), the Ninth Circuit held that consumer debt includes secured debt incurred for personal, family, or household purposes. The court rejected the Kellys' argument that debts secured by real property could never be consumer debts, which they based on floor statements made in the House and Senate prior to enactment of the Bankruptcy Reform Act of 1978. The circuit considered the plain language of the Code (specifically, the definition of "debt"—liability on a claim, § 101(12)—and "claim"—any right to payment, whether secured or. unsecured, § 101(5)(A)), along with references in other provisions of the Code to "consumer debts which are secured by property of the estate," § 521(2), and "consumer debt secured by real property," § 524. The *Kelly* court concluded: "The statutory scheme so clearly contemplates that con-

sumer debt include debt secured by real property that there is no room left for any other conclusion." *Kelly,* 841 F.2d at 912. The court ruled that the debts secured by the Kellys' residence, one for the purchase of the home, and the other for home improvements and the repayment of credit card debts:

> fit comfortably within the Code's definition of consumer debt. It is difficult to conceive of any expenditure that serves a 'family ... or household purpose' more directly than does the purchase of a home and the making of improvements thereon.

*Id.* at 913 (footnote omitted).

The *Kelly* court went on to hold that the "primarily consumer debts" threshold of § 707(b) is crossed when more than one half the dollar amount of total debt is attributable to consumer debts. *Id.* Price's total debts are $322,552.81. According to the exhibit to his petition, his personal debts total $72,150.86. If both debts secured by Price's residence are included (the first, $120,000, incurred to purchase the home, and the second, $21,511, for home improvements), then Price's consumer debt totals at least $213,661.86 ($220,861.86 with the debt to his ex-wife), well over half his total debt. His debts are primarily consumer debts within the meaning of § 707(b) as construed in *Kelly.*

Nevertheless, Price contends that his mortgage debts should not be included in the calculation of "consumer debts" under § 707(b). Although the Ninth Circuit specifically rejected the consideration of only the ratio of unsecured consumer debt to unsecured non-consumer debt in the § 707(b) calculus, 841 F.2d at 913 n. 4, Price first argues that *Kelly's* holding with respect to consumer debts is dicta. He contends the holding was not necessary to the court's decision, because the Kellys' non-mortgage obligations were primarily

consumer debts. Apart from their mortgage debts, the Kellys owed $25,000 in consumer debt and $20,000 in business debt. Thus, the argument goes, more than half the non-mortgage debt was consumer debt, so it was unnecessary to characterize the mortgage debt.

While this may be so, rendering that holding of *Kelly* dicta, the only other circuit which has addressed the question reached the same conclusion: *In re Booth,* 858 F.2d 1051 (5th Cir.1988), and Price cites no case holding, as he would have us do, that mortgage debt is not part of the § 707(b) analysis. As noted in a case including debtor's purchase money mortgage as consumer debt in that analysis:

> Although there has been some suggestion that a debt secured by real property should not be a consumer debt, the overwhelming majority of courts consider first (purchase money) mortgages on residential property to be consumer debts, and second (or later) mortgages to be consumer debt, to the extent that the loan proceeds are used for non-business purposes, such as consolidating other consumer debt or for home improvement.

*In re Praleikas,* 248 B.R. 140, 144–145 (Bankr.W.D.Mo.2000) (footnotes omitted). *See also* Deborah Sprenger, Annotation, *What Are "Primarily Consumer Debts," under 11 U.S.C.A. § 707(b), Authorizing Dismissal of Chapter 7 Bankruptcy Case If Granting Relief Would Be Substantial Abuse of Chapter's Provision,* 101 A.L.R.Fed. 771, § 5 (1991).

Price's second argument is that, even if debts secured by real property can be consumer debts, purchase money mortgages should not be so treated. According to Price, § 707(b) embodies the pre-Code policy favoring granting discharges to merchants over consumers, but treating purchase money mortgages as consumer debts

in the § 707(b) analysis discriminates against homeowners, in violation of policies favoring home ownership in federal housing laws and the Internal Revenue Code. Price complains that a non-homeowner with the same amount of trade debt and disposable income is eligible for a chapter 7 discharge while he is not, only because he borrowed money to purchase a home, a result that he apparently believes, without explication, discourages home ownership.

Price's argument on these points is singularly devoid of authority pertinent to the issues at hand, consisting largely of generalities from secondary sources. He never lays out a rationale (beyond the impact on him) connecting his premise—that interpreting § 707(b) as the bankruptcy court did interferes with the other federal policies he mentions—to his conclusion that the section doesn't mean what virtually every court which has looked at it has said it does.

Next, Price argues that exempt property (presumably meaning debt secured by exempt property) is not consumer debt within the meaning of § 707(b). His argument seems to be that, at least in Nevada, which allows an exemption up to $125,000, Nev. Rev.Stat. § 115.010, homestead property is rarely administered by a chapter 7 trustee (i.e., used to pay creditors). If the debt secured by the homestead is included in consumer debt, he asserts, unsecured creditors will receive an undeserved and unintended windfall (presumably by forcing some debtors into chapter 13). How repaying over three to five years some fraction of what his creditors are owed can fairly be characterized as undeserved or a windfall Price never articulates.

Price also argues that it does not make sense to count as consumer debt amounts that will not be discharged in the bankruptcy, citing *Neary v. Padilla (In re Padilla)*, 222 F.3d 1184, 1194 (9th Cir.

2000), in which the court observed that § 707(b) was intended to "address general concerns regarding discharge of consumer debt." To the extent Price is arguing that the homestead amount should not be included in the calculation of consumer debts, it is not; the exemption amount is limited by debtor's equity. If he is arguing that debt secured by property subject to a homestead exemption and nondischargeable debts should not be included in the calculation of consumer debts, Congress did not so limit the statute. *See In re Hall*, 258 B.R. 45, 49 n. 5 (Bankr.M.D.Fla. 2001), citing *Kelly*, 841 F.2d at 912.

With respect to the exclusion of nondischargeable debt, Price neglects to mention that his personal liability on mortgage debt would ordinarily be discharged in chapter 7, but he reaffirmed both mortgage debts. Nothing in the statutory scheme suggests that a debtor should be allowed to overcome a substantial abuse motion by reaffirming his debts. In any event, Price has not argued that reaffirmation factors into the analysis, nor does he address the fact that the mortgage debt in *Kelly* was non-recourse, 841 F.2d at 913 n. 5, rendering discharge irrelevant.

Price confuses the issue in his reply brief when he complains that the *Kelly* interpretation also discriminates against the business person who owes money on his home in favor of the business person whose home is paid for. The crux of the argument seems to be that, because he is a businessman whose unsecured business debt exceeds his unsecured consumer debt, he should be entitled to a chapter 7 discharge regardless of whether he owes money on his home. But Price never identifies a constitutional or statutory provision which the bankruptcy court's (and *Kelly's*) interpretation transgresses.

Whatever merit Price's policy arguments may have, they ignore the plain language of the applicable statutes, which presumably embody the policies Congress thought most important. Had Congress intended to exclude home mortgages from "consumer debts," it could have done so, but did not. Congress likewise could have made § 707(b) applicable regardless of the nature of the debt, and had the opportunity to change or clarify the "consumer debts" requirement when it amended § 707(b) in 1998. The amendment, ten years after *Kelly* and *Booth*, mandates that the bankruptcy court disregard a debtor's charitable contributions to qualified religious and charitable entities in the substantial abuse analysis. Neither secured debts, nor purchase money mortgages, were mentioned.

### B. *Substantial Abuse*

The debtor's ability to fund a chapter 13 plan is the primary factor to be considered in determining whether granting chapter 7 relief would be a substantial abuse; in the Ninth Circuit, this factor alone will justify a § 707(b) dismissal. *Kelly*, 841 F.2d at 914. Price does not contend this holding is dicta, nor can he. As he conceded at hearing, and again in his brief, he could pay 100% of general unsecured claims over three years. Nevertheless, he argues that his ability to pay is not substantial abuse.

First, he argues that *Kelly's* holding that ability to pay constitutes substantial abuse was implicitly reversed by *Toibb v. Radloff*, 501 U.S. 157, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991), in which the Supreme Court held that an individual debtor not engaged in business could reorganize under chapter 11. Price contends that the *Kelly* court assumed that individual debtors not engaged in business could not file chapter 11 because the prevailing law at the time was that a debtor had to be engaged in business to be eligible for chapter 11 relief, citing *Wamsganz v. Boatmen's Bank of De Sota*, 804 F.2d 503 (8th Cir.1986). Individual debtors, according to Price, were then limited to filing chapter 13, which required them to contribute all disposable income to a plan for three years. Thus, he asserts, a debtor's decision to file under chapter 7 to avoid the chapter 13 disposable income requirement is not substantial abuse, because he could have kept post-petition income had he filed chapter 11.

Second, Price notes that § 707(b) requires a finding of "a substantial abuse of the provisions of *this* chapter," (emphasis added) and that there is no requirement in chapter 7 that a debtor contribute disposable earnings. Therefore, according to Price, equating "ability to pay" with substantial abuse is an impermissible exercise of the court's equitable powers in violation of the statutory scheme.

As neither of these arguments were made to the bankruptcy court, we need not consider them. *See Parker v. Comty. First Bank (In re Bakersfield Westar Ambulance, Inc.)*, 123 F.3d 1243, 1248 (9th Cir.1997). In any event, Price's argument that the *Kelly* court assumed individual debtors not engaged in business could not file under chapter 11 assumes the *Kelly* court would have followed *Wamsganz*. However, at the time *Kelly* was decided, authority in this circuit was to the contrary: *see Warner v. Universal Guardian Corp. (In re Warner)*, 30 B.R. 528, 529 (9th Cir. BAP 1983) (holding that individual debtors may use chapter 11 to save the family home from foreclosure). *See also In re Moog*, 774 F.2d 1073, 1074 (11th Cir.1985) (holding consumer debtors may be eligible for chapter 11 under certain circumstances).

Further, the logic of Price's chapter 11 argument is not apparent. While that chapter has no explicit disposable income requirement, a chapter 11 plan must be proposed in good faith, § 1129(a)(3), be in the best interests of creditors, § 1129(a)(7), and each class of claims must either accept the plan or be unimpaired under the plan, § 1129(a)(8); otherwise, the bankruptcy court must find the plan to be nondiscriminatory and "fair and equitable" in order to confirm it. § 1129(b)(1). It is difficult to imagine a confirmable chapter 11 plan that would allow a debtor in Price's circumstances to keep all of his post-petition income, which raises the question why Price did not file chapter 11 initially or convert to that chapter in response to the substantial abuse motion.

Nor is *Kelly's* holding an impermissible exercise of the court's equitable powers. Section 707(b) was Congress's response to creditors' concerns that many debtors were availing themselves of chapter 7 discharges when they had the ability to repay a substantial portion of their debts. Andrea M. Proia, *The Interpretation and Application of Section 707(b) of the Bankruptcy Code*, 93 Com.L.J. 367, 371 (1988). Congress left to the courts the task of interpreting "substantial abuse." In determining ability to pay to be substantial abuse, the Ninth Circuit considered the committee's report on the final version of the amendment, which stated that use of chapter 7 is a substantial abuse for a debtor who can meet his debts without difficulty as they come due. *Kelly*, 841 F.2d at 914 (citing S.Rep. No. 65, 98th Cong., 1st Sess. 53, 54 (1983)). *Kelly* is consistent with Congressional intent and the plain language of the statute, and with the overall purpose and structure of the statutory scheme, *see Mitchell v. United States (In re Mitchell)*, 977 F.2d 1318, 1320 (9th Cir. 1992), which is to give a fresh start to the honest but unfortunate debtor. *Brown v. Felsen*, 442 U.S. 127, 128, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979).

While there is no indication that Price is dishonest, he is not so unfortunate as to be entitled to a chapter 7 discharge.

## VI. CONCLUSION

Price conceded both elements required for dismissal under § 707(b) as interpreted by the Ninth Circuit Court of Appeals in *Kelly*, and has not credibly distinguished his case. To the extent *Kelly's* holding regarding the inclusion of mortgage debt in the calculus may be dicta, it is soundly reasoned and persuasive, and we adopt its analysis, as Price articulates no convincing counterargument.

The bankruptcy court did not abuse its discretion in granting the UST's motion to dismiss for substantial abuse; we AFFIRM.

RYAN, Bankruptcy Judge, concurring.

While I concur with the result that the majority reaches, I disagree with the its assertion that the holding in *Zolg v. Kelly (In re Kelly)*, 841 F.2d 908 (9th Cir.1988), concerning mortgage debt is dicta. In *Kelly*, the Ninth Circuit decided the question of what constituted consumer debt. Specifically raised before the court was whether the bankruptcy court had properly considered the debtor's mortgage debt in the consumer debt calculus. Thus, the issue was an essential part of the *Kelly* holding. *See Kelly*, 841 F.2d at 912–13. We merely need to affirm regarding the bankruptcy court's holding that mortgage debt is to be treated as consumer debt under § 707(b) by simply following the Ninth Circuit's holding in *Kelly*.