In the Matter of Clifford Jee **COLEMAN, Jr.** and Melinda Coleman, Debtors.

Bankruptcy No. 98–41880.

United States Bankruptcy Court.
D. Nebraska.

Jan. 21, 1999.

James Mathis, Gering, NE, for the Debtors.

Jerry Jensen, Omaha, NE, United States Trustee.

### *MEMORANDUM*

JOHN C. MINAHAN, Jr., Bankruptcy Judge.

■ This matter is before the Court upon the United States Trustee's Motion to Dismiss Under 11 U.S.C. § 707(b) for Substantial Abuse (the "Motion"), and Objection by Debtor. The case is dismissed under 11 U.S.C. § 707(b).

The debtors have an aggregate annual gross income of $86,604. Debtors' gross income is expected to decrease by $351 per month upon the discontinuation of their Foster Child Care income, resulting in debtors' aggregate annual gross income equaling $82,392. Debtors' unsecured debt, as stated in the debtors' bankruptcy schedules, is approximately $35,999. Debtors have a son who is in college and a daughter who is a senior in high school. Since the debtors have the ability to make substantial payments to creditors over the next three to five years under a Chapter 13 plan, I conclude that this Chapter 7 case shall be dismissed.

### *Law*

■ Section 707(b) of the Bankruptcy Code provides for dismissal of a Chapter 7 case filed by an individual debtor where the debts are primarily consumer debts and the court finds that the granting of relief would be a substantial abuse of Chapter 7 proceedings. 11 U.S.C. § 707(b). To qualify as having primarily consumer debts it is sufficient that more than half of the dollar amount owed be on consumer debts. *United States v. Kelly (In re Kelly)*, 841 F.2d 908, 913 (9th Cir. BAP 1988).

■ The Eighth Circuit Court of Appeals has concluded that sufficient reason exists to

dismiss a Chapter 7 petition under 11 U.S.C. § 707(b) where the debtor has "the ability to fund a Chapter 13 plan." *United States Trustee v. Harris,* 960 F.2d 74, 77 (8th Cir. 1992). *See also In re Walton,* 866 F.2d 981 (8th Cir.1989); *Fonder v. United States,* 974 F.2d 996 (8th Cir.1992). However, the Eighth Circuit has not determined the percentage or the amount of unsecured debt a debtor must be able to pay in order to have the "ability to fund" a Chapter 13 plan. *See In re Walton,* 866 F.2d at 985 (ability to fund a Chapter 13 plan where debtor could pay 67% of unsecured debt in 3 years or 100% of unsecured debt in 5 years); *Fonder v. United States,* 974 F.2d at 1000 (ability to fund a Chapter 13 plan where debtor could pay 89% of unsecured debt in 3 years or 100% in five years); *In re Harris,* 960 F.2d at 77 (ability to fund a Chapter 13 plan where debtor could pay over 100% of unsecured debts in 3 years).

■ Although some courts look at a debtor's ability to fund a Chapter 13 plan based on a percentage analysis, I conclude that an analysis based upon the percentage of unsecured debt which could be paid in a Chapter 13 case is not desirable because it rewards debtors who run up high debts. The more appropriate test is whether or not a debtor can make substantial payments to creditors over the life of a three-year Chapter 13 plan. Substantial abuse exists where, for example, a Chapter 7 debtor could afford to make Chapter 13 monthly payments of $300, regardless of whether such payments would pay off 10% or 80% of the debtor's unsecured debt. Such a debtor would be able to pay creditors $10,800, a substantial sum of money, over the course of a three-year Chapter 13 plan. Where the debtor has the ability to make substantial payments it would be a substantial abuse to permit the debtor to proceed in Chapter 7.

### Discussion

The debtors' home mortgage in this case is a consumer debt. Debtors' total debt is listed at $161,655. Debtors classify $50,268 of this debt as "non-consumer" debt. Based on these amounts, 31% of debtors' total debt is non-consumer debt and 69% is consumer debt. Therefore, the debtors' obligations are primarily consumer debts under 11 U.S.C. § 707(b).

■ Debtors assert aggregate monthly income (after taxes) of $4,595,[1] and aggregate monthly expenses of $4,486.[2] Based on these amounts debtors have available $109 per month disposable income. However, I conclude that some of debtors' expenses are discretionary and excessive and are not reasonable or necessary for the maintenance or support of the debtors or their dependents. 11 U.S.C. § 1325(b)(2). In the context of a Chapter 13 case, these debtors would be expected to cut expenses, making more disposable income available with which to pay creditors. *See generally In re Anderson,* 143 B.R. 719, 721 (Bankr.D.Neb.1992) ("The reasonableness of proposed discretionary expenses must be evaluated in light of debtors' income and Chapter 13 plan payments.").

■ The following monthly expenses listed on debtors' bankruptcy schedules are to some extent discretionary and excessive.

First, debtors' expenditures on motor vehicles are excessive. Debtors' list five motor vehicles on their bankruptcy schedules. Four of these motor vehicles result in monthly motor vehicle payments of $984.80. This debt service is higher than it needs to be and could be re-amortized under a Chapter 13 plan.

Second, it does not appear that the debtors need all five motor vehicles. Debtors' list two of their motor vehicles as used by their children for driving to school and work. The debtors are under no obligation to provide motor vehicles to their two children and less costly forms of transportation could be arranged for the children.

■ Third, debtors are spending $520 per month for tuition, room, board and other related college expenses of their 19 year old son. Under Nebraska law these expenses

---

1. $4,946 monthly income listed on Schedule I less $351/month payment received for foster child.

2. $4,536 expenses listed on Schedule J less $50 monthly payment to Sears/JC Penney.

are discretionary since a minor is emancipated at age 19, after which parents are not obligated to pay for the expenses of the child. In addition, under Federal Law these college expenses may be discretionary. *See In re Gyurci*, 95 B.R. 639 (Bankr.D.Minn.1989). I conclude that the expenditure of this $520 per month is not reasonable or necessary for the maintenance or support of the debtors and their dependents. As between bona fide debts to creditors and discretionary expenses on adult children, creditors should be paid first. This is not to say that these debtors could not pay any educational expenses in a Chapter 13 plan, but this is one of several areas where expenses could be cut.

Fourth, debtors' list $550 as monthly food expense. For the three people living at home this amount is on the high side and could be reduced.

Fifth, debtors' list recreation expenses of $125 per month, a discretionary amount that is on the high side and could be reduced.

Having carefully considered debtors' income and expenses, I conclude that the debtors could easily make monthly payments of $250–$350 under a Chapter 13 plan. This $250–$350 monthly payment amount is inclusive of the debtors' currently acknowledged $109 in disposable income and entails a rather modest adjustment to their expenses. In addition, the amount of $250–$350 per month is sufficiently substantial to render these debtors' utilization of Chapter 7 an abuse of the bankruptcy process. I also note that this level of payments would pay between 25% and 35% of debtors' unsecured debt under a three-year plan or between 42% and 58% of debtors' unsecured debt under a five-year plan.

I conclude that it would be a substantial abuse of Chapter 7 to grant relief where the debtors can make monthly payments of $250–$350 in a Chapter 13 plan.

A separate order dismissing this case under 11 U.S.C. § 707(b) will be issued concurrently herewith.

IT IS SO ORDERED.