**In re GUARDIAN TRUST COMPANY.**

**Derek Henderson, Trustee, Plaintiff,**

**v.**

**United States of America and Commissioner of Internal Revenue, Defendants.**

Bankruptcy No. 93–01033JC.
Adversary No. 98–00152JEE.

United States Bankruptcy Court,
S.D. Mississippi,
Jackson Division.

Aug. 12, 1999.

Derek A. Henderson, Jackson, MS, Chapter 7 Trustee.

David C. Mullin, John M. Brown, Amarillo, TX, for Chapter 7 Trustee.

William D.M. Holmes, Washington, D.C., for United States of America and Commissioner of Internal Revenue.

*FINDINGS OF FACT AND CONCLUSIONS OF LAW ON MOTION TO WITHDRAW DEFENDANT'S ADMISSIONS TO THE MATTERS CONTAINED IN PLAINTIFF'S REQUESTS FOR ADMISSION, AND FOR AN EXTENSION OF TIME BY WHICH DEFENDANT CAN RESPOND TO PLAINTIFF'S DISCOVERY UNTIL MAY 1, 1999, AND ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT*

EDWARD ELLINGTON, Chief Judge.

This matter came on for trial on June 11, 1999, at 9:30 a.m. on the *Motion to Withdraw Defendant's Admissions to the Matters Contained in Plaintiff's Requests for Admission, and for an Extension of Time by which Defendant can Respond to Plaintiff's Discovery until May 1, 1999,* filed by Defendants, the United States of America and the Commissioner of Internal Revenue (collectively, the IRS), and on the *Response* thereto filed by Derek A. Henderson, Chapter 7 Trustee for the Debtor, Guardian Trust Company, and on *Plaintiff's Motion for Summary Judgment* filed by the Chapter 7 Trustee. The Trustee, his counsel, and counsel for the IRS appeared at the trial. Having considered the record, as well as the oral arguments presented by counsel at the trial, the Court concludes for the reasons that follow that the *Motion to Withdraw the Defendant's Admissions to the Matters Contained in the Plaintiff's Requests for Admissions* should be denied, and that the *Plaintiff's Motion for Summary Judgment* should be granted.

**1.** Hereinafter, all code sections refer to the United States Bankruptcy Code found at Title

## FINDINGS OF FACT

On March 29, 1993, Guardian Trust Company filed bankruptcy pursuant to Chapter 7 of the Bankruptcy Code.[1] Prior to the bankruptcy filing, the IRS had undertaken an audit of Guardian's 1988, 1989, 1990 and 1991 consolidated federal income tax returns. Therefore, upon Guardian's bankruptcy filing, the Trustee requested in writing that the IRS state the amount of Guardian's tax liability. In response, the IRS mailed a statutory Notice of Deficiency to Guardian on November 15, 1993, wherein it claimed that Guardian owed $5,638,695 in unpaid taxes and penalties for its 1988, 1989 and 1991 tax years. On November 22, 1993, the IRS filed an amended proof of claim in Guardian's bankruptcy case seeking to collect an alleged $6,247,647 in unpaid federal income taxes and penalties, and on August 8, 1995, filed a second amended proof of claim seeking $6,249,290.

Prior to the filing of this adversary proceeding, the IRS sent a list of questions to the Trustee regarding Guardian's income tax liability for 1988, 1989, and 1991. The Trustee and his counsel met with the IRS in October 1997 to provide responses to the IRS's questions. In addition, the Trustee provided the IRS with documentation in support of his position that the Notice of Deficiency was erroneous and that Guardian is actually entitled to a refund for overpayment of taxes in the amount of $2,144,826. When the parties were unable to reach a resolution of their dispute over the amount of tax owed by or refund due to Guardian, the Chapter 7 Trustee filed his *Complaint* initiating this adversary proceeding on June 23, 1998, seeking to conclusively determine Guardian's tax liability.

On August 7, 1998, the IRS filed a motion for an extension of time to respond to

11 of the United States Code unless otherwise stated.

the Trustee's *Complaint*, maintaining that it needed additional time to obtain and review the pertinent administrative files. The Court entered an *Order* granting the IRS's request, and the IRS filed its *Answer* on September 25, 1998. Thereafter, the Court entered a *Scheduling Order*, setting the discovery deadline date as November 30, 1998.

In compliance with the *Scheduling Order*, on October 14, 1998, the Trustee served upon the IRS the *Trustee's First Set of Requests for Admissions, First Set of Interrogatories, and First Set of Requests for Production of Documents*. Immediately thereafter, the Trustee also noticed the depositions of the two IRS agents principally responsible for the Guardian case and of a designated representative of the IRS. The IRS then moved for another extension of time to review its files and to respond to the discovery requests, and on November 17, 1998, the Court granted the IRS until December 1, 1998, to respond to the *Trustee's First Set of Requests for Admissions, First Set of Interrogatories, and First Set of Request for Production of Documents*. The Court also instructed the parties to decide upon new discovery deadlines and to that end, counsel for the IRS subsequently drafted a second *Scheduling Order* which was entered by the Court. The second *Scheduling Order* extended the IRS's response deadline on the *Trustee's First Set of Requests for Admissions, First Set of Interrogatories, and First Set of Requests for Production of Documents* until March 1, 1999, extended the Trustee's time to respond to the IRS's *Motion for Partial Summary Judgment* until May 1, 1999, and extended the deadline for completion of discovery until May 1, 1999. In contemplation of receiving the IRS's discovery responses by March 1, 1999, the Trustee postponed the depositions of the two IRS agents and the IRS's designated representative. Notwithstanding the new *Scheduling Order*, which had been drafted by counsel for the IRS, the IRS failed to serve its responses to the Trustee's requests by March 1, 1999.

Therefore, on April 15, 1999, six weeks after the IRS's March 1, 1999, response due date and two weeks prior to the discovery deadline, the Trustee filed his *Motion for Summary Judgment* based on the IRS's deemed admissions. On April 23, 1999, the IRS filed its *Motion to Withdraw Defendant's Admissions to the Matters Contained in Plaintiff's Requests for Admission, and for an Extension of Time by which Defendant can Respond to Plaintiff's Discovery until May 1, 1999*. On April 30, 1999, the IRS filed its *Responses to the Trustee's First Set of Requests for Admissions* and *First Set of Interrogatories* although it did not respond to the Trustee's *First Set of Requests for Production of Documents*.

In its motion to withdraw the deemed admissions, counsel for the IRS argues that he mistakenly drafted the due date for the IRS's admissions, interrogatories and document production responses as March 1, 1999, because his true understanding was that all of the discovery deadlines were to have been extended until May 1, 1999. The IRS thus petitions the Court to grant withdrawal of the deemed admissions and to consider instead the IRS's *Responses to the Trustee's First Set of Requests for Admissions* and *First Set of Interrogatories* which were filed on April 30, 1999. The IRS offers no explanation regarding its failure to respond to the *Trustee's First Set of Requests for Production of Documents*. The Trustee vehemently opposes the IRS's motion to withdraw the deemed admissions, asserting that the IRS's counsel did understand that the due date set for the discovery responses was March 1, 1999, and further arguing that because the IRS has deemed admitted every material fact in issue, the Trustee is entitled to summary judgment.

## CONCLUSIONS OF LAW ON THE MOTION TO WITHDRAW ADMISSIONS

 Federal Rule of Civil Procedure

36 provides in pertinent part:[2]

> (a) Each matter of which an admission is requested shall be separately set forth. The matter is admitted unless, within 30 days after service of the request . . . the party to whom the request is directed serves upon the party requesting admission a written answer or objection addressed to the matter, signed by the party or the party's attorney.
>
> (b) Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. . . . [T]he court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits.

Fed.R.Civ.P. 36(a, b). The Fifth Circuit has opined that while a court "has considerable discretion over whether to permit withdrawal or amendment of admissions, that discretion must be exercised within the bounds of this two-part test: 1) the presentation of the merits must be subserved by allowing withdrawal or amendment; and 2) the party that obtained the admissions must not be prejudiced in its presentation of the case by their withdrawal." *American Auto. Ass'n v. AAA Legal Clinic*, 930 F.2d 1117, 1119 (5th Cir.1991). Furthermore, because "the language of the Rule is permissive, the court is not required to make an exception to Rule 36 even if both the merits and prejudice issues cut in favor of the party seeking exception to the rule." *Donovan v. Carls Drug Co., Inc.*, 703 F.2d 650, 652 (2d Cir. 1983). Therefore, "[c]ourts should be cautious in exercising discretion to permit withdrawal or amendment of admissions."

*O'Neill v. Medad*, 166 F.R.D. 19, 22 (E.D.Mich.1996).

Pursuant to the law of the Fifth Circuit, the Court must first determine whether the party making the admissions has shown that the presentation of the merits will be subserved by allowing withdrawal or amendment of them. Counsel for the IRS maintains that the admissions should be withdrawn because to allow the deemed admissions to stand would preclude any presentation of the merits of the case, a result which would subvert the goal of litigation to resolve a controversy on its merits rather than by default. Additionally, as noted, he asserts that it was his intention, pursuant to his understanding of the agreement of the parties, to seek an extension of all deadlines to May 1, 1999, and that the inclusion of the March 1, 1999, response deadline was a drafting error. A case of such financial significance, he argues, should not be adversely impacted by the procedural inadvertence of its counsel because the interests of justice will not be served thereby.

■ While the Court must "look at whether the effect of upholding the admissions would be practically to eliminate any presentation of the merits," *Ropfogel v. United States*, 138 F.R.D. 579, 583 (D.Kan. 1991), a "per se rule that a court must permit withdrawal of an admission simply because it relates to an important matter in the litigation is inappropriate in light of the discretionary language of the Rule and its purpose: to narrow the issues, thereby avoiding litigation of unessential and undisputed facts," *Coca-Cola Bottling Co. v. Coca-Cola Co.*, 123 F.R.D. 97, 108 (D.Del. 1988).

Certain circumstances, however, may merit exercise of the court's discretion to allow withdrawal of deemed admissions on the basis that the merits of the case will be subserved thereby. For instance,

---

**2.** Federal Rule of Civil Procedure 36 is made applicable in this Court through Federal Rule of Bankruptcy Procedure 7036.

"[c]ourts have, upon occasion, allowed withdrawals of admissions in extraordinary circumstances: where the admission was made in reliance upon incorrect information obtained from the other party; where the admitting party misconstrued the request; or where the admission was inadvertent and the plaintiff was seeking more than a million dollars." *American Auto. Ass'n*, 930 F.2d at 1121; *see also Reyes v. Vantage Steamship Co., Inc.*, 672 F.2d 556, 557 (5th Cir.1982) (withdrawal of admission allowed where admission based on faulty assumption); *Atakpa v. Perimeter OB–GYN Assocs. P.C.*, 912 F.Supp. 1566, 1581 (N.D.Ga.1994) (withdrawal of admission permitted when record indicates that admission is no longer true or was made pursuant to faulty assumption); *Ropfogel*, 138 F.R.D. at 583 (court may allow amendment or withdrawal of admission when admission is no longer true because of changed circumstances or when through honest error a party has made improvident admission); *Coca–Cola Bottling Co.*, 123 F.R.D. at 108 (when admission is made inadvertently, or new evidence is discovered after admission despite due diligence, Rule 36(b) withdrawal should be allowed).

The IRS, however, has not demonstrated that any such exceptional circumstances exist which would merit withdrawal of the deemed admissions. Rather, the IRS simply asserts that denial of its motion to withdraw the deemed admissions will eliminate the presentation of the case on its merits if its ultimate disposition is made by summary judgment. Yet, as noted *supra*, withdrawal of admissions on the basis that they relate to important matters in the litigation is inappropriate. And, although the Court recognizes that failure to respond to admissions can effectively deprive a party of the opportunity to contest the merits of a case, a seemingly harsh result, such a result is necessary to insure the orderly disposition of cases and to insure that parties to a lawsuit comply with rules of procedure. *United States v. Kasuboski*, 834 F.2d 1345, 1350 (7th Cir.1987); *see also O'Neill*, 166 F.R.D. at 23 (court's deci-

sion to disallow withdrawal or amendment of admissions based on defendant's conduct in failing to respond to requests for admissions within thirty days "emphasizes that parties must comport with the rules of procedure and are not allowed to proceed whimsically without accepting the consequences of their decisions").

■ Moreover, the IRS's position that it should not be penalized for its attorney's mistake is unpersuasive as that argument was specifically addressed in *Beberaggi v. New York City Transit Authority*, wherein that court stated:

> [D]efendant argues that it should not be penalized for its attorney's errors.... [T]he failure of counsel ... to provide timely discovery responses is imputed to the client.... [I]ndeed, although defendant's counsel belatedly attacks the propriety of some of the requests, defendant makes no effort to establish that any are in fact deniable.

*Beberaggi v. New York City Transit Auth.*, 1994 WL 18556 at *3, No. 93–Civ. 1737, 1994 U.S.Dist. LEXIS 384, at *9–10. Thus, the Court concludes that the IRS has failed to establish that withdrawal of the deemed admissions will subserve the presentation of the merits of this case.

The second prong of the test requires the party obtaining the admission to satisfy the Court that the withdrawal or amendment of the admissions will prejudice him. "Courts have usually found that the prejudice contemplated by Rule 36(b) relates to special difficulties a party may face caused by a sudden need to obtain evidence upon withdrawal or amendment of an admission." *American Auto. Ass'n*, 930 F.2d at 1120; *see also Coca–Cola Bottling Co.*, 123 F.R.D. at 106 ("Generally, courts have defined the prejudice as relating to the difficulty a party may face in proving its case because of the sudden need to obtain evidence required to prove the matter that had been admitted.").

In support of his position that the IRS's failure to timely respond to the discovery

requests has prejudiced him, the Trustee maintains that the parties agreed to the March 1, 1999, deadline because that date afforded him an additional sixty days to conduct follow up discovery, including depositions, prior to the expiration of the discovery period. Now that the May 1, 1999, discovery deadline has passed, he is prohibited from conducting supplementary discovery and from the taking of the depositions. Thus, he argues, he is entitled to and has justifiably relied upon the admissions of the IRS. *See, e.g., American Auto. Ass'n*, 930 F.2d at 1121 ("Unless the party securing an admission can depend on its binding effect, he cannot safely avoid the expense of preparing to prove the very matters of which he has secured the admissions, and the purpose of the rule is defeated."); *cf. Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir.1995) (inconvenience government may have suffered by withdrawal of admissions did not rise to level of prejudice justifying denial of withdrawal motion where government proceeded with scheduled depositions and arguably covered all areas raised in requests for admissions). The Trustee also notes that given the incomplete and inadequate nature of the responses which were filed by the IRS on April 30, 1999, he would be further prejudiced by yet another extension of the discovery period as well as the likelihood of having to compel the IRS's cooperation in completing additional discovery, should the Court allow the withdrawal of the deemed admissions.

Many cases support the Trustee's position that frustration and delay of discovery constitutes prejudice sufficient to deny the withdrawal or amendment of deemed admissions. For example, the *Beberaggi* court was called upon to consider the same argument presented by the IRS in this case—that the deadline set for the defendant to submit its admissions responses was the same date that all discovery was to be completed. The court stated:

> [I]f the court had given defendant ... an extension while requiring all other discovery to be completed at the same time, it would have unfairly prejudiced plaintiff since he would have been denied access to any basic information sought in his first round of discovery until all other discovery had been completed.

*Beberaggi*, 1994 WL 18556 at *3, U.S.Dist. LEXIS 384, at *9. The court went on to say:

> It is also evident that to permit defendant to withdraw its admissions as this stage would unfairly prejudice plaintiff. We are at the previously scheduled termination point for fact discovery. As a result of defendants' unjustified delays, plaintiff has been blocked for many months from obtaining meaningful discovery. If defendant were now allowed to withdraw its admissions, it is evident that it would have to reformulate its recently drafted Rule 36 responses since they are plainly inadequate in their current form. Hence we would face further delay in completing discovery, with plaintiff facing the possibility of having to litigate the propriety of still another round of admissions responses by the [defendant].

*Id.* 1994 WL 18556 at *5, U.S.Dist. Lexis 384 at *17. Thus, the court in *Beberaggi* did not allow withdrawal of the admissions because the plaintiff would have been prejudiced by foregoing "much of his planned additional discovery or else seeking an extension of fact discovery, with attendant delay in the resolution of his claims." *Id.* 1994 WL 18556 at *4, U.S.Dist. Lexis 384 at *11–12; *see also Dukes v. South Carolina Ins. Co.*, 590 F.Supp. 1166, 1168 (S.D.Miss.), *aff'd* 770 F.2d 545 (5th Cir. 1985) (withdrawal or amendment not permitted where plaintiffs had been evasive and dilatory throughout litigation and defendant would thereby suffer prejudice by having to prepare for and undergo trial at considerable unrecoverable expense); *Wallace v. Best Western Northeast*, 183 F.R.D. 199, 203 (S.D.Miss.1998) (motion to strike deemed admissions denied where

plaintiff had been dilatory throughout litigation); *Equal Employment Opportunity Comm. v. Jordan Graphics, Inc.*, 135 F.R.D. 126, 128–29 (W.D.N.C.1991) (where plaintiff had been dilatory on other occasions in responding to discovery requests, withdrawal not allowed where additional discovery may have been required and disposition of matter would likely have been delayed).

Such is the case here because counsel for the IRS has engaged in delay tactics throughout this litigation. For instance, having already requested an extension of time to respond to the *Complaint* and two extensions of time to respond to discovery requests, the IRS petitions for yet a third extension of time to respond to discovery after having missed the March 1, 1999, deadline. In addition, the IRS has failed to timely respond to any other motion filed in this case including the *Plaintiff's Motion for Summary Judgment*, and in fact, it was only after being served with *Plaintiff's Motion for Summary Judgment* that the IRS filed its belated responses to the Trustee's requests. It is further apparent that the IRS did not even then put forth a reasonable effort to compile its responses because it failed to meaningfully answer the admissions or the interrogatories or to produce any document despite the Trustee requesting information "seemingly within the control of or available to the defendant." *Beberaggi*, 1994 WL 18556 at *5, 1994 U.S.Dist. LEXIS 384, at *15; *see also Dukes*, 590 F.Supp. at 1168 (in view of plaintiff's failure to timely respond to discovery and under rule 36, defendant had every right to assume that plaintiffs did not believe in their own claims and to file motion for summary judgment based on requests for admissions being taken as admitted). Since after nearly a year of effort, the Trustee is still unable to determine the basis of the IRS's Notice of Deficiency, proof of claim or answer to the lawsuit, and cannot determine what is le-

gitimately in dispute, how the IRS intends to prove its case, or what facts the IRS relies upon, the Court concludes that the Trustee has suffered prejudice such that the IRS's motion to withdraw the deemed admissions should be denied.

## CONCLUSIONS OF LAW ON MOTION FOR SUMMARY JUDGMENT

■ On April 15, 1999, the Trustee filed his *Motion for Summary Judgment*[3] based on the IRS's deemed admissions. It is well established that default admissions can serve as a factual predicate for summary judgment. Fed.R.Civ.P. 56(c); *see also Dukes*, 770 F.2d at 549; *Donovan*, 703 F.2d at 651; *Kasuboski*, 834 F.2d at 1349. And, as noted *supra*, any matter admitted under Rule 36 is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Fed.R.Civ.P. 36. In light of the Court's denial of the IRS's motion to withdraw its admissions, the IRS's admissions are conclusively established. *See American Auto. Ass'n*, 930 F.2d at 1120 ("conclusive effect applies equally to those admissions made affirmatively and those established by default, even if the matters admitted are material facts that defeat a party's claim").

Initially, however, the Court must address a jurisdictional issue raised by the IRS in its *Answer* to the Trustee's *Complaint*. The IRS does not contest this Court's subject matter jurisdiction to consider the merits of the Trustee's objections to the Debtor's tax liability. *See* 11 U.S.C. § 505(a)(1) ("[T]he court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction."). The IRS takes the position, however, that this Court lacks subject matter jurisdiction to order the refund of federal income taxes and interest

---

**3.** As noted, the IRS's *Opposition to Plaintiff's Motion for Summary Judgment* was untimely

filed on June 9, 1999, rather than by the due date of May 10, 1999.

for the years 1988 through 1991 because any such refund would be barred by the Debtor's failure to file timely claims for refunds within the statutes of limitations time periods prescribed by Internal Revenue Code (IRC) § 6511(a) and (b).

■ In short, the IRS argues that the general rule pursuant to IRC § 6511(a) is that, to be timely, a claim for refund must be filed within three years from the date the initial income tax return is filed. The IRS maintains that since Guardian filed its initial income tax return for 1991 on January 12, 1993, Guardian's claim for refund must have been filed by January 12, 1996, to have been timely. The IRS further reasons that Guardian did not file its claim for refund until March 4, 1997, when it filed its amended 1991 return, and that accordingly, the Trustee is time-barred by the general three-year statute of limitations period for refunds. As observed by the Trustee, however, pursuant to IRC § 6512(b)(3)(B), Guardian is deemed to have filed its refund claims for the 1988, 1989, and 1991 tax years on November 15, 1993, which is the date the IRS mailed its Notice of Deficiency to Guardian.[4] *See also Commissioner of Internal Revenue v. Lundy,* 516 U.S. 235, 241–42, 116 S.Ct. 647, 133 L.Ed.2d 611 (1996); *Richards v. Commissioner of Internal Revenue,* 37 F.3d 587, 589 (10th Cir.1994); *Galuska v. Commissioner of Internal Revenue,* 5 F.3d 195, 196 (7th Cir.1993). Thus, Guardian's refund claim for its 1991 tax year was timely filed because it was deemed filed on November 15, 1993, which is within three years of the date of filing of the initial 1991 return on January 12, 1993.

■ Moreover, Guardian timely filed its claims for refunds for its 1988 and 1989 tax years because those years are based on carrybacks of Guardian's net operating loss for its 1991 tax year. IRC § 6511(d)(2)(A) provides that a tax refund claim based on a net operating loss carryback is timely if filed within three years from the due date of the return for the loss year.[5] Since Guardian is deemed to have filed its refund claims for 1988 and 1989 tax years on November 15, 1993, the claims are timely because they were deemed filed within three years of the due date of the 1991 return, which was March 15, 1992.

■ Finally, the Court has jurisdiction to determine the refund for Guardian's 1990 tax year because Guardian's refund claim for its 1990 tax year is based on a net operating loss for the 1991 tax year, a loss which is attributable to deductions for bad debts or worthless securities. Under IRC § 6511(d)(1), a refund claim based on a net operating loss carryback arising because of bad debts or worthless securities is timely if the claim is filed within seven years from the due date of the return for

---

**4.** IRC § 6512(b)(3)(B) provides in pertinent part:

§ 6512. Limitations in case of petition to Tax Court
(b) Overpayment determined by Tax Court—
(3) Limit on amount of credit or refund.— No such credit or refund shall be allowed ... unless the Tax Court determines as part of its decision that such portion was paid—
(B) within the period which would be applicable under section 6511(b)(2), (c), or (d), if on the date of the mailing of the notice of deficiency a claim had been filed (whether or not filed) stating the grounds upon which the Tax Court finds that there is an overpayment, ....

**5.** IRC § 6511(d)(2)(A) states:

§ 6511. Limitations on credit or refund
(d) Special rules applicable to income taxes.—
(2) Special period of limitation with respect to net operating loss or capital loss carrybacks.—
(A) Period of limitation.—If the claim for credit or refund relates to an overpayment attributable to a net operating loss carryback or a capital loss carryback, in lieu of the 3–year period of limitation prescribed in subsection (a), the period shall be that period which ends 3 years after the time prescribed by law for filing the return (including extensions thereof) for the taxable year of the net operating loss or net capital loss which results in such carryback, ....

the loss year.[6] Guardian's refund claim for 1990, filed on March 4, 1997, was filed within seven years of the due date for its 1991 loss year return, which as noted above, was March 15, 1992. As each of the refund claims was timely filed, the Court concludes that it does have subject matter jurisdiction to consider Guardian's claims for refunds of overpayment of its income taxes.

As to the substantive matters raised in the *Motion for Summary Judgment*, the Trustee challenges asserted deficiencies and penalties made in the statutory Notice of Deficiency mailed to Guardian on November 15, 1993. Furthermore, he seeks a refund of $2,144,826 for taxes overpaid by Guardian with respect to 1988, 1989, 1990 and 1991 consolidated federal income tax returns, plus statutory interest. In the deemed admissions, the IRS admits the following:

1. Guardian is entitled to a bad debt deduction of $3,623,185 for loans made by White Enterprises, Inc. ("White Enterprises") to Old Hickory Casualty Insurance Company ("Old Hickory") that became worthless during the taxable year ending December 31, 1991 ("1991 tax year").

2. Guardian is entitled to a bad debt deduction of $7,356,529 for loans made by Termplan, Inc. ("Termplan") to Universal Agency, Inc. ("Universal") that became worthless during the 1991 tax year.

3. Termplan realized and recognized a gain of $8,354,699 during the 1991 tax year for the sale of its assets to Norwest Financial, Inc. ("Norwest Financial").

4. Guardian is entitled to a bad debt deduction of $814,714 for loans made by Termplan to Acadian Capital Corporation ("Acadian") that became worthless during the 1991 tax year.

5. Guardian is entitled to a deduction of $1,055,016 for bad debt losses claimed by Credit Centers, Inc. ("Credit Centers") on the tax return for the taxable period ending December 31, 1991 ("1991 return") for consumer installment obligations that became worthless during the 1991 tax year.

6. Guardian is entitled to a deduction of $2,700,000 for bad debts in Termplan's Manning, South Carolina office that became worthless during the 1991 tax year.

7. Guardian is entitled to a deduction for general and administrative expenses sustained by Credit Centers during the 1991 tax year in the amount of $5,653,640.

8. The IRS erroneously increased the retained earnings of White Enterprises on the 1991 return of $3,465,862 resulting in an erroneous increase to Guardian's income of $2,466,378.

9. The IRS erroneously assessed penalties for the 1988, 1989 and 1991 tax years.

a. The IRS erroneously assessed accuracy related penalties under IRC § 6662 amounting to $869,338 with respect to the 1991 return.

b. The IRS erroneously assessed accuracy related penalties under IRC § 6662 amounting to $32,444 with respect to the 1989 return.

c. The IRS erroneously assessed negligence and substantial understatement penalties of $51,348 with respect to the 1988 return.

---

**6.** IRC § 6511(d)(1) provides:
 § 6511. Limitations on credit or refund
 (d) Special rules applicable to income taxes.—
 (1) Seven-year period of limitation with respect to bad debts and worthless securities.— If the claim for credit or refund relates to an overpayment of tax imposed by subtitle A on account of—

(A) The deductibility by the taxpayer, under section 166 or section 832(c), of a debt as a debt which became worthless, or, under section 165(g), of a loss from worthlessness of a security, ... in lieu of the 3–year period of limitation prescribed in subsection (a), the period shall be 7 years from the date prescribed by law for filing the return for the year with respect to which the claim is made.

10. Guardian is entitled to a refund of $295,766 for amounts paid with respect to the 1988 return, $325,955 for amounts paid with respect to the 1989 return, $423,105 for amounts paid with respect to the 1990 return, and $1,100,000 for amounts paid with respect to the 1991 return.

a. As a result of the omissions from its 1991 return, Guardian overstated its consolidated taxable income for the 1991 tax year by $7,384,255.

(1) Termplan overstated the gain it recognized on the sale of its assets to Norwest Financial on the 1991 return by $2,350,765.

(2) Guardian overstated its taxable income on the 1991 return because White Enterprises understated the amount of the bad debt loss sustained as a result of the loans to Old Hickory that became worthless during the 1991 tax year by $1,123,185.

(3) Guardian overstated its taxable income on the 1991 return because Termplan understated the amount of the bad debt loss it sustained as a result of loans that became worthless during the 1991 tax year to Universal by $3,095,591.

(4) Guardian overstated its taxable income on the 1991 return because Termplan failed to claim a deduction for a bad debt of $814,714 for loans to Acadian that became worthless during 1991 tax year.

b. As a result of adjustments made by the IRS in the Notice of Deficiency to which Guardian did not object and Guardian's second amendment to its 1991 return, Guardian sustained a consolidated net operating loss of $5,542,833 for the 1991 tax year.

c. Of the $5,542,833 net operating loss for the 1991 tax year, Guardian is entitled to carry back $5,218,011 of that loss to its third preceding tax year (1988) under § 172(b)(1) of the IRC of 1986.

d. As a result of adjustments made by the IRS in the Notice of Deficiency to which Guardian did not object and the net operating loss carryback, Guardian sustained a consolidated net operating loss of the 1988 tax year of $3,844,706.

e. Guardian is entitled to carry back to the 1989 tax year the amount of $3,844,706 representing the unused consolidated operating loss sustained for the 1991 tax year.

f. As a result of adjustments made by the IRS in the Notice of Deficiency to which Guardian did not object and the $3,844,706 carryback of unused net operating loss sustained during the 1991 tax year, Guardian sustained a net operating loss for its 1989 tax year of $2,408,890.

g. Guardian is entitled to carry back to its 1990 tax year, $2,408,890 of the net operating loss sustained during 1991.

h. Guardian sustained a net operating loss of $1,164,465 for its 1990 tax year.

11. Guardian's tax payments were not deficient, as asserted by the IRS in the Notice of Deficiency, in the amount of $171,158 for the 1988 tax year, $162,222 for the 1989 tax year, and $4,352,185 for the 1991 tax year. The IRS has admitted that the adjustments made in the Notice of Deficiency are erroneous to the extent:

a. The IRS erroneously disallowed $565,052 of the bad debt losses claimed by Credit Centers on the 1991 return for consumer installment obligations that became worthless during the 1991 tax year.

b. The IRS erroneously disallowed the deduction of $2,500,000 claimed by White Enterprises on the 1991 return for the worthlessness during the 1991 tax year of a loan made by White Enterprises to Old Hickory.

c. The IRS erroneously disallowed the deduction of $4,260,938 claimed by Termplan on the 1991 return for the worthlessness during the 1991 tax year of loans made by Termplan to Universal.

d. The IRS erroneously disallowed the deduction of $2,700,000 claimed by Termplan on the 1991 return for the worthlessness during the 1991 tax year of consumer

installment loans held by Termplan in its Manning, South Carolina branch office.

e. The IRS erroneously disallowed deductions aggregating $1,441,956 claimed by Credit Centers on the 1991 return for general and administrative expenses it incurred during the 1991 tax year in conducting its consumer loan business through its several branch offices.

f. The IRS erroneously increased the taxable income of White Enterprises for its 1991 tax year by $3,465,862 as a result of the increase in its retained earnings reported on the 1991 return.

g. The IRS erroneously calculated the gain realized and recognized by Termplan in connection with the sale of a substantial portion of its assets to Norwest Financial during the 1991 tax year.

12. Guardian is not truly indebted to the IRS for $6,247,647 as asserted in its amended proof of claim filed November 22, 1993.

Thus, the IRS has admitted the ultimate issue that Guardian is entitled to each of the deductions and overstated gains sought for its claims for refund and challenges to the Notice of Deficiency and has admitted the relevant facts to establish those deductions. The IRS has admitted that the bad debt deductions claimed by Guardian became worthless during the 1991 tax year. Under IRC § 166, a deduction is allowable for a bona fide bad debt in the year that it becomes worthless. Therefore, Guardian is entitled to the bad debt deductions pled in the *Complaint*.

The IRS has admitted that the general and administrative expenses incurred by Credit Centers were ordinary and necessary expenses associated with the conduct of its consumer loan business. Ordinary and necessary business expenses are deductible under IRC § 162. Therefore, Guardian is entitled to the full deduction claimed on the 1991 return and the asserted deficiency of $1,441,956 in the Notice of Deficiency was erroneous.

The IRS also admitted the relevant facts necessary to establish that Termplan overstated the gain realized on the sale of its assets to Norwest Financial. The IRS admitted that the amount payable to Termplan was $128,771,098. This amount must be reduced by the undisputed claims of $10,965,180 asserted by Norwest Financial. The basis in the assets was $109,451,219. Therefore, the correct gain was $8,354,699.

Finally, the IRS admitted that White Enterprises' accountant, Arthur Anderson and Company, overstated White Enterprises' retained earnings based on a computational error. Therefore, the IRS erroneously increased Guardian's income by that amount in the Notice of Deficiency.

Based on the foregoing deemed admissions, Guardian has established that all of the deficiencies and penalties asserted in the Notice of Deficiency were erroneous and that Guardian is entitled to each of the deductions and overstated gains sought for its claims for refund. Consequently, Guardian is entitled to a refund for overpayment of taxes in the amount of $2,144,826 with respect to its 1988, 1989, 1990 and 1991 consolidated federal income tax returns. Moreover, in accordance with IRC § 6621, Guardian is entitled to interest on the federal income taxes to be refunded to it. As no genuine issues of material fact remain for trial, the Court concludes that *Plaintiff's Motion for Summary Judgment* should be granted.

## CONCLUSION

Having considered the record and the arguments of the parties presented at the trial of this matter, the Court is persuaded that the *Motion to Withdraw Defendant's Admissions to the Matters Contained in Plaintiff's Requests for Admission, and for an Extension of Time by which Defendant can Respond to Plaintiff's Discovery until May 1, 1999,* filed by the IRS should be denied, and that the *Plaintiff's Motion for Summary Judgment* should be granted.

A separate final judgment consistent with this opinion will be entered in accordance with Federal Rules of Bankruptcy Procedure 7054 and 9021.