**In re Ronald L. MILLS, Debtor.**

**Bankruptcy No. 99–07826–A7.**

United States Bankruptcy Court,
S.D. California,
San Diego Division.

March 23, 2000.

As Amended March 30, 2000.

■■■■■■■■■■

Richard G. Bain, El Cajon, CA, for debtor.

Leslie T. Gladstone, La Jolla, CA, Chapter 7 Trustee.

John Patrick Boyl, Office of the U.S. Trustee, San Diego, CA, for U.S. Trustee.

## MEMORANDUM DECISION

LOUISE DeCARL ADLER, Chief Judge.

## I.

## INTRODUCTION

The United States Trustee (the "UST") moves, pursuant to 11 U.S.C. § 707(b), for an order dismissing the chapter 7 case of Ronald Mills ("Mills" or the "debtor") because the UST contends that granting this debtor a discharge would be a "substantial abuse" of chapter 7. The UST contends that if Mills was not permitted to fund his voluntary 401(k) plan with 10% of his salary or to repay $146 per month toward a loan he had taken out against that plan, he would be able to pay 96% of his debt within three years in a chapter 13 case. The UST argues, under the Ninth Circuit's decision in *In re Kelly*, 841 F.2d 908 (9th Cir.1988), this chapter 7 case must be dismissed or, at the debtor's option, converted to one under chapter 13.

The debtor objects insisting that he filed his chapter 7 petition in good faith and is truly in need of the "fresh start" contemplated by the discharge provisions of chapter 7. He argues that the reported decisions dismissing chapter 7 cases for "substantial abuse" all involve some element of improper purpose, which is not present here. The debtor also argues that his 401(k) plan expenses are modest and legitimate and ought not be added back to determine his ability to repay his debts.

This Court concludes that whether or not a debtor may deduct 401(k) plan expenses from his disposable income as reasonably necessary for his support and maintenance is determined on a case by

case basis. Here, the Court finds that the 10% plan contribution is reasonably necessary while the monthly $146 401(k) loan repayment is not. After adjusting the debtor's monthly disposable income to include the additional $146 in disposable income, this Court concludes that based upon the debtor's apparent ability to repay a substantial amount of his debt and the absence of any other factor which would compel a different conclusion, relief to this debtor under chapter 7 would be a substantial abuse of chapter 7.

## II.

## BACKGROUND

On September 21, 1999, Mills filed his voluntary chapter 7 petition under title 11 of the United States Code (the "Bankruptcy Code"). His schedules of assets and liabilities reveal that his unsecured debt consists almost entirely of credit card debt, represented by six different credit cards totaling $24,127. The debtor states that the credit card debt was incurred for items he purchased for his ex-wife's children during his one and one-half year marriage. He claims that although his ex-wife had initially agreed to pay for those items, she later recanted. The remainder of the unsecured debt is $700, which is the unsecured portion of a time share loan on land in Pompano Beach, Florida.

Other than his interest in the time share, the debtor does not own real property and his only personal property is exempt from creditors' claims by virtue of California Code of Civil Procedure § 704.010 *et seq.* As of the petition date,

his qualified 401(k) plan had a balance of $9,000. However, at least four months prior to filing his petition, the debtor borrowed $7,600 against that plan to pay $975 to his dentist, $900 to pay moving expenses, and $1,925 to pay other creditors and the expense of his divorce. He also gave one-half of those borrowed funds ($3,800) to his ex-wife. The debtor is 56 years old and has no other retirement savings plan.

The debtor's Schedule "I" lists average monthly income of $3,019, less taxes and 401(k) contributions aggregating $1,073, and arrives at a monthly adjusted gross income of $1,946. His monthly expenses, which appear modest, are reflected as $1,575 on schedule "J." According to the debtor's calculations, his monthly disposable income is $371. The UST, however, adds back the monthly voluntary 10% 401(k) contribution (of $302) and the monthly repayment of the 401(k) loan (of $146) to arrive at a monthly disposable income of $819.[1]

## III.

## LEGAL ANALYSIS

 Section 707(b) of the Bankruptcy Code allows a court, on its own motion or upon motion by the United States Trustee but not at the request or suggestion of any party in interest, to dismiss a chapter 7 case filed by an individual debtor whose debts are primarily consumer debts if the court finds that the discharge of those debts would be a "substantial abuse" of chapter 7. *See* 11 U.S.C. § 707(b).[2] Al-

---

1. The debtor points out that the UST's calculation is not entirely accurate insofar as the $301 plan contribution is exempt from taxes. If it were not made, that $301 would be subject to state and federal taxes, which should be deducted prior to determining the debtor's disposable income. The Court agrees; however, the issue is irrelevant insofar as the Court concludes that the expense is legitimate and need not be added back at all. *See infra* § III.A.1.

2. The use of § 707(b) is limited. First, the Court may only dismiss a case under § 707(b) upon the Court's own motion or upon the motion of the UST, but not at the request or suggestion of any party in interest. *See* 11 U.S.C. § 707(b). Second, Federal Bankruptcy Rule 1017(e) imposes a time limit within which such a motion may be made, that is, the motion must be filed by the UST within 60 days after the first date set for the meeting of creditors under § 341(a) or, if the motion is made by the Court *sua sponte,* notice must be

though "substantial abuse" is not defined in the Bankruptcy Code, the Ninth Circuit has held that, "the debtor's *ability to pay* his debts when due, as determined by his ability to fund a chapter 13 plan, is the primary factor to be considered in determining whether granting relief [under chapter 7] would be a substantial abuse." *In re Kelly*, 841 F.2d 908, 914 (9th Cir. 1988) (emphasis added). Nonetheless, "[t]hose debtors who are, for no fraudulent or improper reasons, truly in need of a 'fresh start' will not be subject to 707(b) dismissal." *Id.* at 913; *see, e.g., In re Martin*, 107 B.R. 247 (Bankr.D.Alaska 1989) (even debtor's ability to repay more than 50% of debt did not justify finding of substantial abuse where other factors predominated).

■ In determining whether a substantial abuse exists, there is a presumption in favor of granting the debtor a discharge. 11 U.S.C. § 707(b). The burden of persuasion under § 707(b) is upon the UST as movant. *See generally In re Wilkins*, No. 96–35061, 1997 WL 1047545 at *1–2 (Bankr.D.Minn. Mar.26, 1997); *In re Haffner*, 198 B.R. 646, 649 (Bankr. D.R.I.1996). This means that "the Court should give the benefit of any doubt to the debtor and dismiss a case only when a substantial abuse is clearly present." *In re Kelly*, 841 F.2d at 917 (quoting 4 *Collier*

*on Bankruptcy* ¶ 707.08 at 707–19 (15th ed.1987)).

## A. *Ability to Pay*

■ Whether a debtor has the "ability to pay" his debts when due is determined by looking at the debtor's ability to fund a chapter 13 plan. *In re Kelly*, 841 F.2d at 915. A review of the debtor's schedules of current income and current expenditures is an appropriate place to start. *See* 6 *Collier on Bankruptcy* ¶ 707.04[2] at 707–18 (15th ed. rev.1999). The court, however, is not bound by those schedules. The Ninth Circuit suggests applying the same test that the court would otherwise use in chapter 13 for determining whether the debtor's claimed expenses qualify as " 'reasonably necessary . . . for the maintenance or support of the debtor or a dependent of the debtor.' " *In re Kelly*, 841 F.2d at 915 n. 9 (quoting 11 U.S.C. § 1325(b)(2)(A)).

Here, the UST calculates that if the debtor's 401(k) expenses were not permitted, the debtor could pay 96% of his unsecured debt within three years with approximately $746 in monthly disposable income.[3] In determining whether granting this debtor relief under chapter 7 would be a substantial abuse, it is imperative to determine the propriety of these two 401(k) expenses.

---

served on the debtor no later than 60 days after the first date set for the meeting of creditors. *See* Fed.R.Bankr.P. 1017(e). Third, as set forth above, § 707(b) applies only to cases filed by an individual debtor whose debts are primarily consumer debts. *See* 11 U.S.C. § 707(b). Here, the UST filed this motion on December 17, 1999, less than 60 days after the October 20, 1999 first date set for the meeting of creditors, and, as shown in the facts section above, this individual's debts are primarily consumer debts, see 11 U.S.C. § 101(8) (defining "consumer debt" as "debt incurred by a individual primarily for a personal, family, or household purpose"). Thus, the motion is proper under § 707(b) and Federal Bankruptcy Rule 1017(e).

3. The $746 in monthly disposable income is calculated by adding to the debtor's disposa-

ble income of $371, the monthly $146 plan repayment expense and the $302 plan contribution expense (the latter less state and federal taxes of $28.09 and $45.30, respectively, the amounts asserted by the debtor). Projected disposable income, of $26,856, is calculated by multiplying the $746 by 36 months. *See In re Anderson*, 21 F.3d 355, 357 (9th Cir.1994) (directing that projected disposable income is generally calculated by multiplying monthly income by 36 months). Subtracting the hypothetical chapter 13 expenses of $2,910 from the projected disposable income results in projected income available for distribution of $23,946. Comparing this amount with the debtor's present unsecured debt of $24,827, the debtor could repay approximately 96% of his debt within 36 months.

*1. Propriety of 401(k) Plan Contribution Expenses*

Several bankruptcy courts have held that voluntary contributions to a 401(k) plan are not reasonably necessary expenses for purposes of calculating disposable income under § 1325(b)(2)(A).[4] *See, e.g., In re Feldmann,* 220 B.R. 138, 145 (Bankr.N.D.Ga.1998); *In re Delnero,* 191 B.R. 539, 542 (Bankr.N.D.N.Y.1996); *In re Moore,* 188 B.R. 671, 675 (Bankr.D.Id. 1995); *In re Cavanaugh,* 175 B.R. 369, 373–74 (Bankr.D.Id.1994). These cases, with scant analysis, appear to endorse a *per se* rule prohibiting the inclusion of 401(k) contributions as expenses as a matter of law.[5] Later courts have followed these cases, also seemingly endorsing a *per se* prohibition against 401(k) contributions being considered "reasonably necessary" for the support and maintenance of a debtor as a matter of law. *See, e.g., In re Hansen,* 244 B.R. 799, 801 (Bankr.N.D.Ill. 2000). Indeed, although the UST neglected to cite these cases in this motion, at least two bankruptcy courts have already applied this § 1325(b)(2)(A) *per se* prohibition against 401(k) expenses in the context of a § 707(b) dismissal motion. *See In re Heffernan,* 242 B.R. 812, 818 (Bankr. D.Conn.1999); *In re Watkins,* 216 B.R. 394, 396 (Bankr.W.D.Tex.1997). Both of these courts concluded that 401(k) expenses are not reasonably necessary, and must be added back to determine the debtor's ability to pay, without undue hardship, a substantial amount of his debt. *See In re Heffernan,* 242 B.R. at 818 (dismissing case under § 707(b)); *accord In re Watkins,* 216 B.R. at 396.

A review of the cases cited at the hearing by the UST and this Court's own independent research does not reveal any Ninth Circuit precedent directly on point. In a somewhat similar context, the Ninth Circuit Bankruptcy Appellate Panel concluded that under § 1325(b)(2)(A), there was no *per se* rule prohibiting a debtor's deducting *life insurance premiums* as a reasonably necessary expense. *Smith v. Spurgeon (In re Smith),* 207 B.R. 888, 890 (9th Cir. BAP 1996). Instead, the Ninth Circuit Bankruptcy Appellate Panel directed that the trial court consider what is reasonably necessary in the case before it, based upon the totality of the circumstances. *See id.* at 890; *see also In re Rothman,* 204 B.R. 143, 159 (Bankr. E.D.Pa.1996) (noting that court does not object to debtor spending "reasonable amount" on life insurance premiums but holding that $350 per month is excessive in the case before it). An Alabama bankruptcy court extended the *Smith* reasoning to qualified retirement plans, noting that while generally such contributions would be included as disposable income, these questions are always questions of fact which must be determined in the context of individual debtors and their dependents. *See In re Tibbs,* 242 B.R. 511, 516–18 (Bankr.N.D.Ala.1999).

Based upon the lack of precedent compelling a *per se* rule and its seeming incongruity with the plain language of § 1325(b)(2)(A), this court declines to adopt one, and instead chooses to follow the case by case analysis employed by *In re Tibbs,* 242 B.R. at 516. Neither the text of § 1325(b)(2)(A) nor its legislative history specifies what types of expenses the

---

**4.** It has been held, however, that the funds already in the qualified retirement account are not "disposable income" within the meaning of § 1325(b). *See In re Solomon,* 67 F.3d 1128 (4th Cir.1995); *In re Stones,* 157 B.R. 669 (Bankr.S.D.Cal.1993).

**5.** The cases upon which they rely, however, do *not* adopt a *per se* rule, but rather appear to address the necessity of the claimed expenses on a case per case basis. *See, e.g., In*

*re Festner,* 54 B.R. 532, 533 (Bankr.E.D.N.C. 1985) (holding that debtor's *additional* retirement fund was not reasonably necessary); *In re Fountain,* 142 B.R. 135, 136–37 (Bankr. E.D.Va.1992) (analyzing the circumstances of the case before rejecting the debtor's proposed retirement plan contribution); *cf. In re Cornelius,* 195 B.R. 831, 835 (Bankr. N.D.N.Y.1995) (debtor *conceded* that his 401(k) was not reasonably necessary).

court should treat as "reasonably necessary." *See In re Gillead,* 171 B.R. 886, 889 (Bankr.E.D.Cal.1994). Thus, there is no bright line test for determining whether a debtor's expenses are reasonably necessary for his maintenance and support. The reasonableness of the debtor's expenses must be determined from the totality of the debtor's individual circumstances. *Id.* at 890. A debtor must also be allowed some degree of discretionary spending, which must be judged for reasonableness. *Id.; see also In re Gonzales,* 157 B.R. 604, 608, 611 (Bankr.E.D.Mich. 1993) (noting that even "the expense budget form prescribed by the Official Forms (Schedule J) recognizes that a family cannot live by bread alone").

 Here, the debtor attests that he has no other retirement savings plan, that he is 56 years old, and that he desires to continue funding his qualified 401(k) plan with 10% of his salary, approximately $302 per month. As of the petition date, the balance in the plan is only $9,000, so this is clearly not an instance where the debtor has accumulated substantial amounts of equity in a retirement plan, which he desires to continue padding at the expense of his creditors. *Cf. In re Watkins,* 216 B.R. at 396 ($1,099 monthly retirement fund contribution is not reasonably necessary); *cf. also In re Fountain,* 142 B.R. at 137. Moreover, a review of the debtor's schedules indicates very modest budgeting on all scores. Based upon this evidence, the court concludes that under § 1325(b)(2)(A), this debtor is permitted to deduct as a reasonably necessary expense, the 10% voluntary contribution to his qualified 401(k) plan. In these circumstances, there is no reason to conclude that providing a modest amount of contribution to a 401(k) plan is not reasonably necessary for the maintenance and support of this debtor.

### 2. *Propriety of 401(k) Loan Repayment Expenses*

As for *repayments* of funds borrowed from a qualified 401(k) plan, two circuit courts seemingly have concluded as a matter of law that such repayments are not reasonably necessary for a debtor's maintenance and support. *See In re Anes,* 195 F.3d 177, 180–81 (3d Cir.1999); *In re Harshbarger,* 66 F.3d 775, 777 (6th Cir. 1995). However, as with the bankruptcy cases cited above with respect to voluntary contributions, these cases also appear to adopt a *per se* rule holding that repayment of amounts withdrawn from retirement accounts are not reasonably necessary as a matter of law. While the justification offered by these latter courts for adopting a *per se* rule is attractive—see *In re Scott,* 142 B.R. 126, 135 (Bankr.E.D.Va.1992) (noting that to rule otherwise would send inappropriate message to future debtors to take out loans against retirement funds and then insulate those sums from creditors)—it is simply unsupported by the plain reading of the statute. *See* 11 U.S.C. § 1325(b)(2)(A).

 To the contrary, at least one bankruptcy court has adopted a case by case analysis to determine whether repayments of loans from retirement accounts are reasonably necessary for purposes of § 1325(b)(2)(A). *See In re Esquivel,* 239 B.R. 146, 149 (Bankr.E.D.Mich.1999). For the same reasons stated above, this Court also declines to adopt a *per se* rule prohibiting 401(k) loan *repayments* from being considered reasonably necessary for the maintenance and support of the debtor or a dependent of the debtor. *See supra* § III.A.1; *see also In re Esquivel,* 239 B.R. at 149. As with 401(k) plan contributions, the Court will examine the reasonable necessity of the plan repayments based upon the totality of the circumstances of the case.

 Here, Mills voluntarily borrowed $7,600 from his 401(k) plan, and then gave half of that money away. By his own actions, he demonstrated that he did not believe that portion of his 401(k) retirement fund was reasonably necessary for his support or maintenance. This debtor

has not argued the existence of any circumstance which should cause this Court to conclude that his repayment of the loan is necessary for his support or maintenance. *Cf. In re MacDonald,* 222 B.R. 69, 75–76 (Bankr.E.D.Pa.1998). On these facts, the court concludes that under § 1325(b)(2)(A), the proposed *repayment* to the 401(k) plan is not reasonably necessary.

With these conclusions in place, this Court must still consider whether granting this debtor a discharge would be a substantial abuse of chapter 7. Based upon this Court's holding that the $302 monthly 401(k) contribution is reasonably necessary, while the $146 monthly 401(k) loan repayment expense is not, this Court recalculates the monthly disposable income at $517, and the projected disposable income at $18,612, and a projected income available for distribution of $16,135, after deducting the $2,477 in hypothetical chapter 13 expenses.[6] Comparing this amount to the total unsecured debt of $24,827, it appears that the debtor could repay approximately 65% of his unsecured debt within 36 months.

### B. *Substantial Abuse Under § 707(b)*

■ Under the Ninth Circuit's decision in *In re Kelly,* a finding that a debtor has the "ability to pay" his debts, standing alone, will support a finding of substantial abuse. *See In re Kelly,* 841 F.2d 908, 915 (9th Cir.1988). Moreover, a debtor's "ability to pay" is the primary factor a court should consider in determining whether to dismiss a case for substantial abuse. *Id.* at 914. However, neither the *Kelly* Court nor § 707(b) define exact parameters on what amount of disposable income per

month or the ability to pay what percentage of debt over what period of time, would constitute an "ability to pay" for purposes of substantial abuse under § 707(b).

One bankruptcy court has suggested focusing on whether the debtor could make "substantial payments" to creditors over the life of a three year plan, rather than focusing on the percentage of debt which could be repaid. *See In re Coleman,* 231 B.R. 760, 762 (Bankr.D.Neb.1999). The debtors in *In re Kelly* were found to have $690 per month in disposable income, with the ability to repay nearly 100% of their debts within 36 months. *Id.* at 915. In another case, the Ninth Circuit Bankruptcy Appellate Panel affirmed a bankruptcy court's dismissal under § 707(b) after finding that the debtors had $1,287.90 per month in disposable income, with which they could repay 43% of their debts within 36 months. *See Gomes v. United States Trustee (In re Gomes),* 220 B.R. 84 (9th Cir. BAP 1998).[7] The Court in *In re Gomes* noted that the debtor's $1,287.90 monthly disposable income was "no small sum," and that the debtors submitted no evidence on any other factors, aside from their apparent ability to pay. *See In re Gomes,* 220 B.R. at 88; *cf. In re Martin,* 107 B.R. 247 (Bankr.D.Alaska 1989) (even debtor's ability to repay more than 50% of debt did not justify finding of substantial abuse where other factors predominated).

■ It should be noted, however, that neither *In re Gomes* nor *In re Kelly* adopted a percentage or an amount which would *per se* constitute substantial abuse. Rather, *In re Kelly* instructs that the principal "factor" to be considered in determining substantial abuse is the debtor's ability

---

**6.** Projected disposable income is calculated by adding back the $146 loan repayment expense to the debtor's calculated monthly disposable income ($371) to arrive at $517, and then multiplying this amount by 36 months. *See In re Anderson,* 21 F.3d 355, 357 (9th Cir.1994) (directing that projected disposable income is generally calculated by multiplying monthly income by 36 months).

**7.** For an extensive compilation of various court's findings with respect to ability to pay, see *In re Attanasio,* 218 B.R. 180, 188–89 n. 6, 192–93 n. 8, 199–200 nn. 24–27 (Bankr. N.D.Ala.1998).

to repay. *See In re Kelly*, 841 F.2d at 914. Some courts have articulated other factors which also may be considered in determining the presence or absence of substantial abuse. They may include, for example:

(1) whether the bankruptcy petition was filed as a result of a sudden illness, calamity, or unemployment (*Motaharnia*);

(2) whether the debtor obtained cash advances and made purchases far in excess of his ability to repay (*Motaharnia*);

(3) whether the debtor has engaged in "eve of bankruptcy" purchases (*Krohn*);

(4) whether the debtor's proposed family budget is excessive and unreasonable (*Motaharnia*);

(5) whether the debtor's schedules and statement of current income and expenses are reasonably accurate (*Motaharnia*);

(6) whether the petition was filed in good faith (*Motaharnia*);

(7) whether the debtor exhibited good faith and candor in filing his schedules and other documents (*Krohn*);

(8) whether the debtor enjoys a stable source of future income (*Krohn; Lamanna*);

(9) whether the debtor's disposable income permits the liquidation of his debts with relative ease (*Krohn*);

(10) whether the debtor is eligible for adjustment of his debts through chapter 13 (*Krohn; Lamanna*);

(11) whether there are state remedies with the potential to ease the debtor's financial predicament (*Krohn; Lamanna*);

(12) whether there is relief obtainable through private negotiations (*Krohn; Lamanna*); and

(13) whether there are any other circumstances which weigh in favor or against granting the debtor the fresh start a chapter 7 discharge would provide (*Krohn*). *See In re Lamanna*, 153 F.3d 1, 4 (1st Cir.1998); *In re Krohn*, 886 F.2d 123, 125–127 (6th Cir.1989); *In re Motaharnia*, 215 B.R. 63, 70 (Bankr.C.D.Cal. 1997).

In this case, as set forth above, this debtor has the "ability to pay" $517 per month toward his debt, resulting in a 65% return to creditors over a 36 month period. As the court found in *In re Gomes*, this court finds this amount to be "no small sum," especially considering that the debtor's disposable income approximates 25% of his take home pay.[8] As for the other factors, it would appear that the debtor's bankruptcy was precipitated by a failing marriage, and that the substantial amount of his debt was incurred because of that. Although it does not appear that Mills engaged in "eve of bankruptcy" purchases, it does appear that in obligating himself to $24,127 in credit card debt over a mere one and one-half year period, he continuously incurred debt far in excess of his ability to pay. As stated above, this Court finds Mills' current expenditures modest and reasonable. Further, he has otherwise demonstrated good faith in filing this chapter 7 petition, the schedules and other documents. Mills appears to have a stable income which would permit his payment of a substantial amount of his debt over a short period of time with relative ease. And he appears eligible for chapter 13 relief. There is no other evidence which would weigh in favor of granting this debtor a chapter 7 discharge.

Based on the foregoing, and giving most weight to the primary factor of the debtor's ability to repay a substantial amount of debt with relative ease over the next 36 months, the UST has met his burden of persuading the Court that the grant of a discharge to this debtor would constitute a substantial abuse of chapter 7. Accordingly, this Court finds that granting this debt-

8. This is calculated by looking at the debtor's net monthly paycheck, not considering the $146 loan repayment which is automatically withdrawn each month. ($3019 − 1,073 + 146 = $2,089). $517 is almost 25% of $2,089.

or relief under chapter 7 would be a substantial abuse of the Bankruptcy Code.

## IV.

## CONCLUSION

The UST's § 707(b) motion is granted and this case will be dismissed if Mills does not voluntarily convert this case to a chapter 13 proceeding within fourteen days of the date this Decision is filed. This Memorandum Decision shall constitute the Court's findings of fact and conclusions of law. At the expiration of fourteen days after the date of this ruling, if the debtor has not elected to convert this case to one under chapter 13 as permitted by 11 U.S.C. § 706(a), the UST shall forthwith submit an order dismissing this case.